Belknap,
No. 4418.

STATE, *by Lela E. Dolloff, Complainant*

*v.*

SAMUEL SARGENT.

Argued November 1, 1955.

Decided December 6, 1955.

*Tilton & Tilton* for the plaintiff, furnished no brief.

*Normandin & Normandin* (*Mr. F. A. Normandin* orally), for the defendant.

GOODNOW, J. The child, of which the defendant was found to be the father, was begotten and born while the mother, Lela E. Dolloff, was married to and living with her husband, Maurice Dolloff. In these circumstances, the child is presumed to be legitimate. Under our statutes (RSA *ch.* 522), and under our common law (*Saunders* v. *Fredette*, 84 N. H. 414), it is recognized, however, that this presumption is one which may be rebutted. The defendant's exceptions in this case are principally concerned with the competency and sufficiency of the evidence to do so.

The Uniform Act on Blood Tests to Determine Paternity (RSA 522:2) provides that in appropriate cases blood tests may be made by experts who shall be appointed by the court in such number as the court may determine. No minimum number of experts is specified in this section of the statute. However, each of the sections concerned with the effect to be given to the results of blood tests performed by experts (*ss.* 4, 5, 6) refers to "the conclusions of all the experts" and states what the result is to be "if the court finds" that those conclusions all agree. If the court finds that "all the experts" agree that the alleged father is not the father of the child, "the question of paternity shall be resolved accordingly." *S. 4.* In respect to the husband, if the court finds that "all the experts" agree that he is not the father, "the presumption of legitimacy . . . is overcome." *S. 5.* It is also provided in *s.* 4 that if the experts disagree the question of the alleged father's paternity "shall be submitted upon all the evidence."

It seems apparent from the language of these two sections that the Legislature intended the first mentioned provisions to be operative only when there exists such a guarantee of accuracy as is afforded by the concurrence of opinions of more than one expert as to the facts established by their separate tests. Both sections contemplate that the court, as a preliminary matter, shall make findings as to whether "all the experts" do or do not agree. In the event of such a finding, the result specified in the statute is deemed to be conclusively established.

In this case, only one expert was appointed to make blood tests. He testified that his conclusion from the tests was that the husband was not the father. Since there was only one set of tests and one expert, section 5 could not be applied and the Trial Court properly submitted to the jury the question of whether the results of his tests alone should be accepted.

The presumption of legitimacy may be rebutted under our

common law by satisfactory proof that the husband is not the father of the child. *Saunders* v. *Fredette*, 84 N. H. 414, 416. Proof beyond a reasonable doubt is not required but the evidence must be of greater weight than is required to support a probability. It is sufficient if it is "clear and convincing." *Groulx* v. *Groulx*, 98 N. H. 481, 484.

In support of her claim that her husband is not the father, the mother was permitted to testify that she and her husband had no sexual relations during the period when the child was conceived. By his exception to the admission of this evidence, the defendant raises the issue of whether a wife's testimony concerning non-access by her husband is admissible in proceedings in which such testimony would tend to prove the illegitimacy of a child conceived during the marriage.

Under the rule which originated with Lord Mansfield in *Goodright* v. *Moss*, 2 Cowp. 591, both the husband and wife are incompetent to testify as to the husband's non-access when such testimony would tend to bastardize a child conceived or born during the marriage. Although it has been vigorously attacked (VII Wig. Ev. (3d *ed.*) *s.* 2064), the rule is well established in substantially all of the jurisdictions of this country, except where otherwise provided by statute. Annos. 60 A. L. R. 380; 68 A. L. R. 421; 89 A. L. R. 911. See also, 10 C. J. S. 172; 7 Am. Jur. 641. For a contrary rule see *State ex. rel. Yerian* v. *Brinker*, (Ohio App.) 35 N. E. (2d) 878; *Moore* v. *Smith*, 178 Miss. 383; *Peters* v. *District of Columbia*, 84 A.(2d) 115; *Murphy* v. *District of Columbia*, 85 A.(2d) 805. The Kansas court at one time refused to follow the rule (*Lynch* v. *Rosenberger*, 121 Kan. 601) but now does so. *Stillie* v. *Stillie*, 129 Kan. 19.

The question has not been directly dealt with in this state since 1863. It was then held "to be well established . . . that it is against public policy that either husband or wife should be admissible to prove the want of access, and thus bastardize their issue." *Corson* v. *Corson*, 44 N. H. 587; *Parker* v. *Way*, 15 N. H. 45, 49. The rule was later affirmed in *Melvin* v. *Melvin*, 58 N. H. 569, although it was there held to be inapplicable, the action being one in which the legitimacy of children was not in issue. See *Loudon* v. *Loudon*, 114 N. J. Eq. 242. While the arguments against it are not wholly without merit, the rule has been so long an established policy in this state and has been so consistently followed in others that its rejection today becomes more a legislative

function than a judicial one. *Corson* v. *Corson, supra,* 588. *Cf Taylor* v. *Whittier,* 240 Mass. 514, followed by Mass. G. L. (Ter. ed.) c. 273, ss. 11-19. The defendant's exception to the admission of the wife's testimony concerning non-access must be sustained.

The defendant's motion for a directed verdict, however, was properly denied. Excluding the mother's incompetent testimony concerning non-access, there remains the testimony of Dr. William C. Boyd, the single expert appointed to make blood tests. We cannot adopt the defendant's contention that his testimony is not of sufficient quality to rebut the presumption of legitimacy.

The defendant first claims, in connection with the blood tests, that the baby from whom a sample of blood was taken, was not clearly and convincingly identified as Mrs. Dolloff's child. The evidence concerning this matter discloses that a child was born to Mrs. Dolloff on March 27, 1953, at Our Lady of Perpetual Help in Manchester, arrangements having been made by the Department of Public Welfare for Mrs. Dolloff's confinement there. Mrs. Dolloff never saw the child and left it at the hospital when she returned to Laconia. Thereafter, Emiline Lufkin, a child welfare worker for the Department of Public Welfare, discussed with Mrs. Dolloff her plans for the baby and at Mrs. Dolloff's request a foster home was found for it. On April 16, 1953, Mrs. Lufkin "went to Manchester and got the baby and placed the baby in a foster home." This baby was the one from whom the blood sample was taken. Because no one from the hospital testified as to what had become of Mrs. Dolloff's baby and because Mrs. Lufkin simply testified that she went to Manchester and got it, without identifying the place in Manchester, the defendant argues that the baby in the foster home may have been taken by Mrs. Lufkin from some hospital in Manchester other than Our Lady of Perpetual Help, or if it was taken from that hospital that some baby other than Mrs. Dolloff's may have been mistakenly turned over to Mrs. Lufkin. These are merely possibilities of defense which the plaintiff was not required to disprove. *Smith* v. *Hooper,* 89 N. H. 36, 37. The evidence was such that the jury might reasonably conclude that the baby which Mrs. Lufkin placed in the foster home was Mrs. Dolloff's baby.

The principal question raised by the defendant concerns the testimony of Dr. Boyd based upon the blood tests. These tests as to the blood groupings A-B-O and M-N were inconclusive on the question of paternity since they showed that either Mr. Dolloff or

the defendant could be the father. However, on the basis of the Rh blood grouping, as developed by Dr. Weiner, the tests showed that the baby has two Rh-1 factors, the mother has one, the defendant has one and Mr. Dolloff has none. Paternity of Mr. Dolloff was excluded by Dr. Boyd because of the genetic rule that each parent contributes one and only one of the genetic factors determining the blood group of a child and that any factors which could not have come from the mother must have come from the father.

The defendant contends that Dr. Boyd's opinion excluding Mr. Dolloff, solely on the basis of the Rh blood group and unsupported by a similar result in the A-B-O and M-N blood groups, is not that clear and convincing proof required to rebut the presumption of legitimacy. With this we cannot agree. While the A-B-O and M-N systems have been recognized for longer periods of time, are more widely used and are less complicated than the Rh system, they are independent systems concerned with distinct and separate blood factors. The failure of the results in these groups to support the result reached in the Rh group does not negative the latter result. Nor does the unavailability of certain sera that might be used in various refinements of the Rh tests necessarily contradict the opinion of Dr. Boyd that "paternity under the Rh [may] be excluded with the same degree of certainty as in the A-B-O and M-N systems." His expert opinion evidence based on the blood tests was entitled to such weight as the jury wished to give it. *Groulx* v. *Groulx*, 98 N. H. 481, 485. We cannot say as a matter of law that it could not amount to clear and convincing proof that Mr. Dolloff was not the father of the child.

Dr. Boyd's testimony was also admitted to show that the blood tests indicated the possibility of the defendant's paternity. Evidence of a possibility is ordinarily inconclusive at most and therefore inadmissible. RSA 522:4 provides, however, that when the blood tests show such a possibility, the evidence may be admitted within the discretion of the court "depending upon the infrequency of the blood type." Upon retrial, the Court should exercise its discretion in determining whether the evidence is of sufficient probative value to be entitled to consideration on the issue of the alleged paternity of the defendant.

Since there must be a new trial, consideration of other exceptions does not appear necessary.

*New trial.*

All concurred except Kenison, C. J., who dissented in part.

Kenison, C. J., *dissenting in part*: The majority ruling is that a mother, the person most likely to know, cannot testify to the non-access of her husband in a bastardy proceeding. Since that is to be the law of this state, it may be proper to mention briefly some counter considerations. This rule of evidence was a historical accident when it was first invented by Lord Mansfield in an ejectment action decided in 1777 (*Goodright* v. *Moss*, 2 Cowp. 591, 98 Eng. Rep. 1257) and no modern text on the law of evidence supports it. Schatkin, Disputed Paternity Proceedings (3rd *ed.* 1953) *c.* 3. Wigmore criticizes this rule of evidence as dogmatic, inconsistent and pharisaical and concludes that there "never was any true precedent for the rule; and there is just as little reason of policy to maintain it." VII Wig. Ev. (3rd *ed.*) *ss.* 2063, 2064. McCormick, Evidence, *s.* 67 (1954) agrees that this is a just criticism and states that it is an "eccentric incompetency" which some courts have "wisely rejected" and recommends in "view of the impolicy of the rule" that it be given a restrictive application. *Cf.* The Uniform Reciprocal Enforcement of Support Law, enacted in 1953, which provides that husband and wife "may be compelled to testify to any relevant matter, including marriage and parentage." RSA 546:24.