Carroll
No. 7137

MICHAELINE B. TWOMEY

v.

THOMAS F. TWOMEY

January 31, 1976

*Norberg & Hunter (Mr. Colin A. Norberg* orally) for Michaeline B. Twomey.

*Winer, Lynch, Pillsbury & Howorth (Mr. Robert W. Pillsbury* orally) for Thomas F. Twomey.

GRIFFITH, J.   This is a libel for divorce brought by Michaeline B. Twomey against her husband, Thomas F. Twomey, and a cross-action by the husband seeking an annulment, joined with a libel for divorce. The case was referred to a Master *(Charles T. Gallagher,* Esq.) who heard the case and recommended the granting of a divorce to the wife on the grounds of irreconcilable differences, the dismissal of the husband's petition for annulment and the granting of his libel for divorce on the grounds of adultery. The master recommended orders dividing the property of the parties, granting custody of the two children to the wife and requiring support payment by the husband. The master's report was accepted and a decree issued in accordance with his recommendations by the Trial Court *(Batchelder,* J.) who reserved and transferred the exceptions of both parties. The only exception of the wife relates to the admission of certain evidence. We overrule this exception without detailed consideration because of the broad discretion exercised over admission of evidence in divorce cases. *See Pflug v. Pflug,* 92 N.H. 247, 29 A.2d 422 (1942).

The husband has excepted to the master's finding that the husband had failed to prove by clear and convincing evidence his claim that he was not the natural father of Karen, the oldest child of the marriage. Karen was conceived before the parties were married and was born on May 16, 1968, after they were married. The husband claims that he was fraudulently induced to marry his wife

by her representations that he was the father of Karen. He acknowledges Monique, their second child, as his natural daughter.

The issue of Karen's paternity first arose in April of 1971 prior to the separation of the parties. Michaeline told Thomas that he was not the father of Karen and that her real father was a Mr. Mack of Pennsylvania. Michaeline further volunteered to Thomas at that time that she was having an affair with a Leon A. Nash, Jr., subsequently named as corespondent in the husband's libel. The separation of the parties and the cross-actions were triggered by these statements. Michaeline testified before the master that both of these statements were untrue although she admitted adultery with Nash after the separation. She testified she made the statements in order to make her husband jealous and in order to get him to pay more attention to her.

The master's findings on this testimony were as follows: "The plaintiff now denies that anyone other than the defendant is Karen's father. She explains her statement [to Thomas] . . . by logic which baffles male lawyers but the master recognizes, through long experience, that the explanation may appear fully logical and reasonable to members of the plaintiff's sex." The master's finding could be interpreted as an acceptance of her testimony on this point as true. Some doubt, however, is cast on this interpretation by the rejection by the master of Michaeline's denial of having had sexual relations with Mr. Mack and her denial of having committed adultery with an attorney (not of counsel in this case) by whom she was employed as a secretary.

The master found inconclusive the testimony of the parties on the claim of Thomas that he was not with Michaeline during the period of Karen's conception. Through Thomas' Pennsylvania counsel, there was introduced a signed statement from Mr. Mack acknowledging the paternity of Karen. The master found on this statement that "Mr. Mack obviously thinks he is the father of the child but he is not a medical expert."

The master noted that no blood tests were offered in evidence and presumed that they were inconclusive. The briefs of both counsel agree that the master's conclusion on blood tests was correct.

The presumption that a child born during a marriage is the natural child of the husband may be rebutted by clear and convincing evidence that the husband is not the father. *Watts v. Watts,* 115 N.H. 186, 337 A.2d 350 (1975); *State v. Sargent,* 100 N.H. 29, 118 A.2d 596 (1955); *Groulx v. Groulx,* 98 N.H. 481, 103 A.2d 188

(1954); *Saunders v. Fredette,* 84 N.H. 414, 151 A. 820 (1930). In our opinion, the record would support a finding by the master that Karen was not the natural daughter of the husband. Since the belief or disbelief of the parties and witnesses is solely the preroga- tive of the trial court *(Lester v. Lester,* 109 N.H. 359, 252 A.2d 429 (1969)), we would sustain a finding that the husband had not sus- tained the burden of proof on this issue. The difficulty is that the findings and rulings of the master leave us in doubt as to whether the proper standard of proof was applied.

In referring to the presumption of legitimacy, the master ruled: "This presumption can be overcome only by the most clear and convincing evidence of which the most powerful is a blood test which conclusively rules out the husband as the parent of the child." The addition of the word "most" to clear and convincing proof coupled with the granting of plaintiff's request No. 9 with its reference to "proof beyond a reasonable doubt" makes it unclear whether the master adopted a burden of proof greater than re- quired. Accordingly, the case is remanded to the trial court for clarification of the findings and rulings on this issue.

The remaining exceptions of the husband relate to the orders of support and division of property. The husband has been an airline pilot for over fifteen years. In 1971, he earned $35,000 as a captain for Northeast Airlines. In August of 1972, Northeast merged with Delta Airlines and he lost seniority and became a copilot earning about $1,650 per month. In November 1973, he took a leave of absence from Delta and at the time of the hearing claimed to be earning about $100 per week in a selling job. The master found he could return to Delta at least as a flight engineer which would produce $1,000 a month. The master found the husband was approximately $10,000 in arrears on the original temporary order of $175 per week. A motion filed by the husband to reduce his support payments when his reduction in pay occurred had not been heard at the time of the hearing on the merits and the arrear- age occurred after the filing of that motion. The wife was working as a legal secretary at the time of the hearing and earning approx- imately $300 a month take-home pay.

The husband's financial affairs were somewhat tangled and the master found his testimony less than convincing on the disposition of certain borrowed money and his inability to more adequately support the wife. The master found the husband owned an apart- ment house on Beacon Street in Boston with no equity and a nega- tive cash flow. In addition to the mortgages on the apartment

building, the master found the husband owed some $26,000 to Boston banks.

The master recommended that the husband pay $400 per month toward the support of the children and that the house in Moultonboro be awarded to the wife subject to the mortgage and unpaid taxes. The master found that the husband purchased the Moultonboro home in 1962 at a cost of $17,500 and the mortgage was about $6,000. The master found that the husband was in arrears approximately $10,000 under the temporary order of support and that the court had not acted on the motion to modify this order filed when his pay was reduced. The master found that the wife and children could live most economically in the Moultonboro house and in view of the award of that property to the wife cancelled any arrearage of the husband's support order.

While the writer of this opinion would set aside the award of the Moultonboro house to the wife as an abuse of discretion the majority of the court are of the opinion that on the basis of the expressed purpose of the award and the cancellation of the arrearage, the evidence comes within the broad discretion of the trial court in such matters. *Weik v. Weik,* 114 N.H. 287, 319 A.2d 295 (1974); *Labrie v. Labrie,* 113 N.H. 255, 305 A.2d 687 (1973); *see Ford v. Ford,* 112 N.H. 270, 293 A.2d 605 (1972). We cannot accept the argument of the husband that the master did not consider the husband's ability to pay during the period his motion to modify was pending and unheard. The award of the house in Moultonboro was not made solely in satisfaction of the husband's arrearage on the support order but was based upon other relevant factors. *See Comer v. Comer,* 110 N.H. 505, 272 A.2d 586 (1970).

In the event the trial court should reach a different result on the remanded issue of Karen's legitimacy, the question of whether this requires a different property settlement and support order is for the trial court.

*Exception of Michaeline B. Twomey is overruled; exceptions of Thomas F. Twomey sustained in part; remanded.*

All concurred.