445 So.2d 44 (1984)
Judy Theresa JONES
v.
Lee Anthony THIBODEAUX.
No. CA-1234.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Rehearing Denied February 22, 1984.[*]
Writ Denied April 13, 1984.
*45 Floyd J. Reed, Reed & Reed, New Orleans, for defendant-appellant.
Kim A. Gandy, New Orleans, for plaintiff-appellee.
Before GARRISON, KLEES and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiff filed suit seeking to have defendant declared the father of her child. After a trial on the merits, the court found defendant to be the father of the child. Defendant has appealed and raises three issues: (1) Whether the blood test evidence was admissible; (2) Whether plaintiff proved filiation by a preponderance of evidence; (3) Whether Louisiana Act 521 of 1972 (enacting La.R.S. 9:396-398) is constitutional.
We find the blood test evidence admissible, that plaintiff proved filiation by a preponderance of evidence, and that Louisiana Act 521 of 1972 is constitutional. Accordingly, we affirm.
At trial defendant timely objected to the blood test evidence arguing that a proper foundation had not been laid for admissibility of this evidence. Defendant makes the same argument on appeal.
The Uniform Act on Blood Tests to Determine Paternity was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1952. Louisiana adopted the act in its entirety in 1972. Section one of the Act, La.R.S. 9:396, provides the authority for the court to order that the blood tests be conducted. Section two, La.R.S. 9:397, provides for the selection of the experts to conduct the tests and states, in part, that the experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Section four, La.R.S. 9:397.2, provides for the effect of the test results and states, in part, if the experts conclude that the blood tests show the possibility of the alleged father's paternity, that admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type.
The trial judge in this case ordered the tests conducted and appointed Dr. L. Ray Bryant as the expert. Defendant testified that he went to Dr. Bryant's office and permitted the taking of the required samples of his blood. (Defendant also provided Dr. Bryant's office with a picture of himself, permitted the taking of his thumbprint and allowed inspection of his driver's license, all for identification purposes). Dr. Bryant testified at trial concerning the procedures involved for maintaining the integrity of the tests and his conclusions that the probability of defendant being the father of the child is 99.8%.
Appellant's brief contains the following outline of Dr. Bryant's testimony concerning the routine his staff is expected to follow for drawing, testing and evaluating blood samples:
1. A person in Dr. Bryant's office requests the donors for photographs of themselves, compares them with drivers' licenses, and secures a thumbprint. As to the child, only a photograph and thumbprint are obtained.
2. Thereupon, a blood donor nurse draws three blood samples from each of the three persons into three separate vials which she then labels respectively.
3. Yet another person takes the nine vials containing the blood of the three *46 persons and delivers them to two other locations in the hospital. Two of each of the three vials are delivered to the red cell laboratory and one of the three vials is delivered to the white cell laboratory.
4. In the red cell laboratory, technicians perform tests and analyses upon the blood and reduce the results to a written communication which is sent to the office of Dr. Bryant.
5. In the white cell laboratory, technicians perform tests and analyses upon the blood and reduce the result to a written communication which is sent to the office of Dr. Bryant.
6. Dr. Bryant then reviews the reports or communications from the two laboratories, the red cell laboratory and the white cell laboratory, and puts the data together and makes one of two conclusions:
(a) Parenthood is excluded, or
(b) Parenthood cannot be excluded.
7. A written report is prepared under the direction of Dr. Bryant and signed by him.
Dr. Bryant testified to his findings and was cross-examined by the parties. The doctor's conclusions indicated the possibility of the defendant's paternity, and, the trial judge, exercising his discretion under La.R.S. 9:397.2, admitted this evidence. We find no abuse of that discretion and will not disturb the trial court's ruling on admissibility.
Appellant next argues that plaintiff did not carry her burden of proof at trial. Appellant's argument is, of course, based upon the evidence remaining in exclusion of the blood test evidence.
The evidence produced by plaintiff, in addition to the blood test evidence, included her testimony about the sexual relationship which existed between her and the defendant. This testimony indicated that plaintiff and defendant had engated in sexual intercourse during the time period of conception. In order to corroborate this testimony, plaintiff produced a diary wherein she had made notations on the days on which she and defendant had sex. Plaintiff also testified that she had not had sex with anyone other than defendant during the time period of conception.
Plaintiff testified also, that defendant was aware that she had become pregnant and had wanted her to have an abortion. She further testified that defendant continued to see her before and after the child was born, visited her and the child in the hospital, sent her flowers in the hospital with a card that read "May God Bless Our Son", visited her and the child at her home and occasionally gave her money for support of the child. Plaintiff also produced a baby book, two pages of which were a family tree diagram which plaintiff testified was filled in at the hospital by her and the defendant on their respective sides of the tree.
Defendant admitted to having a casual sexual relationship with plaintiff, but testified that this relationship had come to an end some months prior to conception. Defendant denied being aware of plaintiff's pregnancy, visiting her during pregnancy or at the hospital, sending her flowers or giving her money.
When defendant was first asked if he knew that plaintiff had a baby, he replied, that he knew because of the lawsuit. Subsequently, defendant admitted to having visited the plaintiff and to having seen the child in January of 1980. Defendant also initially agreed that a picture of him holding the baby would be "inaccurate." When confronted with the photograph, however, defendant acknowledged the January, 1980, visit.
He testified that he had visited plaintiff because she had called him at his office and asked him to see her. Defendant claims to have obliged plaintiff's request for a visit because he was aware that some women experience postpartum depression and he thought he would be kind and visit plaintiff. He admits that during the visit he held the child, but it was because plaintiff had made this additional request. The photograph in the record shows defendant holding and feeding the baby.
*47 Credibility evaluations and factual resolution are the province of the trier of fact, in this case the trial judge. The trial judge found defendant to be the father of the child. Our review of the entire record satisfies us that this finding is not clearly wrong. We, therefore, will not disturb the finding. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Defendant also argues that the statutes dealing with the blood tests are unconstitutionally vague. In support of his position, defendant has cited certain United States Supreme Court cases recognizing the principle that a non-criminal statute is unconstitutionally vague if men of common intelligence must necessarily guess at its meaning. The remainder of defendant's argument is unsupported by any authority. He dismembers the statutes and argues that certain phrases are without unequivocal meaning.
Statutes are presumed constitutional. The party alleging unconstitutionality bears the burden of proof. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576 (1965).
By adopting the Uniform Act on Blood Tests to Determine Paternity, the legislature intended to provide a carefully regulated evidentiary procedure having precedence over laws of general applicability. The thrust of the statute is to make available scientific evidence, adduced through medical experts appointed by the court and called to testify by the court. McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir.1980).
We are not impressed with defendant's complaints that the terms "blood tests", "experts", and "blood types" are not adequately defined in the statutes. We find that men of common intelligence can clearly understand the meanings of these terms as they are used in La.Act 521 of 1972. While these terms may have multiple connotations when considered in a vacuum, as defendant suggests we do, when they are considered in the context of the act, the terms provide denotations with enough clarity and specificity to meet constitutional requirements.
Accordingly, we find that defendant has failed to carry his burden of proving that the statutes are unconstitutional. His plea of unconstitutionality is, therefore, overruled.
Having failed to find merit in any of appellant's specifications of error, we affirm the judgment of the trial court. All costs are to be paid by defendant-appellant.
AFFIRMED.
NOTES
[*] Garrison, J. was of the opinion the rehearing should be granted.