459 So.2d 146 (1984)
STATE of Louisiana, Through the DEPARTMENT OF HEALTH & HUMAN RESOURCES, SUPPORT ENFORCEMENT SERVICES, In the Interest of Jennifer Lynn MILLER, minor Child of Barbara Miller, Plaintiff-Appellee,
v.
Henry SMITH, Defendant-Appellant.
No. 16572-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
*147 Lacroix & McKeithen by Leslie L. Lacroix, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Lillian Dunlap, Asst. Dist. Atty., Monroe, for plaintiff-appellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this action under LRS 46:236 et seq., defendant appeals a judgment recognizing him as the natural father of a child born May 11, 1974. He contends that the preponderance of the evidence does not prove his paternity and that expert testimony should not have been considered. LRS 9:397. We affirm.
The State of Louisiana, Department of Health and Human Resources, Support Enforcement Services, brought the action on *148 behalf of the child. Defendant answered and denied his paternity of the child. Defendant had counsel who answered the action and interrogatories and who signed a pre-trial statement. Trial occurred about a year after the action was filed but neither defendant nor his counsel appeared at the trial.

FACTS
The child's mother identified defendant as the brother of her sister's husband. She testified that the child was conceived when she and the defendant had sexual relations on one occasion in August 1973. She said that she did not have sexual intercourse with anyone else for a six month period surrounding the conception in August 1973.
The mother said that defendant visited the child twice during the first week she was out of the hospital and that he visited the child every other week for several months after that, once accompanied by his sister. According to the mother, defendant continued to visit the child occasionally over the next several years and on some occasions gave the child clothes, toys, a bicycle, and money. The mother also testified that defendant acknowledged to his legitimate daughter, who accompanied him on one visit, that the child was also his daughter.
In answers to interrogatories, the defendant admitted that he knew the child's mother, that he had sexual relations with her in 1973, that he knew the child, that he had visited the child's residence, and that he had given money to the child.
Samples and test results of blood from the child, the mother, and defendant, which were taken under the authority of LRS 9:397, were introduced in evidence. Two experts, Linda Armstrong, a blood technician, and Pat Wojtkiewicz, a biologist-microbiologist, who were appointed by the court, testified at trial. Ms. Armstrong, an expert in blood typing, testified about the procedure she used to draw and type the blood from the three donors.
The report signed and identified by these two witnesses, and by their superior, Mr. Ray Herd, the director of the Louisiana Criminalistics Laboratory, was admitted into evidence. This report concluded that defendant could not be excluded as the father of the child, and that it was 305 times more likely that defendant was the father than another randomly selected black male.
Mr. Wojtkiewicz, an expert in paternity testing, explained the genetic principles on which the testing is based, identified that part of the report which he had prepared after analyzing the results of Ms. Armstrong's tests, reviewed the report, and opined that it was 99.6 percent probable that defendant was the father of the child.
Defendant and his attorney were given notice of the trial but did not appear to cross-examine the mother or the expert witnesses. The joint pre-trial statement signed by defendant's lawyer shows that defendant did not name any witnesses or evidence which he intended to present.
A "Narrative of Facts" was prepared by a deputy clerk and was certified by the clerk of court in lieu of a transcript. CCP Arts. 2130, 2131. The narrative and the pre-trial statement indicate that the state was prepared to call two other witnesses besides the mother and the two experts. These witnesses were not called because the court stated that it was prepared to rule without further evidence.
Defendant argues that the expert testimony should not have been considered because only one expert testified as to the probability of defendant being the father of the child. Defendant contends that LRS 9:397 requires the appointment of at least two experts to testify to the possibility of paternity.[1] Defendant argues that under *149 such circumstances, the court abused its discretion and that its findings must be reversed.
Whether the Uniform Act on Blood Tests to Determine Paternity, LRS 9:396-398, requires the appointment and testimony of more than one expert is a question which has not been expressly answered in Louisiana. Dicta in McGowan v. Poche, 393 So.2d 278, 281 (La.App. 1st Cir.1980), indicates an affirmative answer. "The statute clearly requires the appointment of experts who shall be called by the court to testify to their findings... Here ... Experts were not appointed... Such procedure is clearly not contemplated by the statute. At least two individual experts should have been appointed."
In McGowan, a single expert witness had concluded that the defendant could not possibly have sired that child. The trial court granted defendant's motion for summary judgment. The court of appeal correctly held that the procedural device of summary judgment was not available in such a situation. McGowan correctly ruled on the summary judgment because, in our opinion, the Uniform Act contemplates that one or more expert witnesses will testify at trial.
Under the Uniform Act, the court has the usual discretion in admitting and weighing evidence. The only constraint is contained in Section 397.2 which mandates that a court resolve the question of paternity in the defendant's favor "if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child."
In Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.1984), the expert testimony came from a single doctor who had based his opinion on his analysis of the results of tests done by his staff technicians. The defendant there argued that the blood test evidence was not admissable because plaintiff did not lay proper foundation. The court of appeal answered that "LRS 9:397.2 provides for the effect of the test results and states in part, if the experts conclude that the blood tests show the possibility of the alleged father's paternity, that admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type."
The Jones defendant did not argue and the court did not expressly consider the question whether the statute requires the testimony of more than one expert. Jones based its ruling, in part, on the opinion of a single expert who analyzed the results of tests performed by others under his employ.
Section 7 of Act 521 of 1972 states that the Uniform Act on Blood Tests to Determine Paternity "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states, including Louisiana, which enact it." State v. Sargent, 100 N.H. 29, 118 A.2d 596 (1955), is analogous to McGowan because only one expert testified and his results excluded the possibility of that defendant being the father. The supreme court of New Hampshire held that a trial court has the discretion of admitting and giving whatever weight it deems appropriate to the opinion of the one expert. We find no other case in point.
The Uniform Act does not compel a court to exclude evidence. The only mandate of the act is that mentioned, the court shall decide in favor of the defendant when all experts agree that the defendant could not be the father.
When the experts disagree as to the possibility of the defendant being the father, or the experts agree that the defendant could possibly be the father of the child, the act does not limit the trial court's admission of relevant and material evidence. See LRS 9:397.2. We see no error when *150 only one expert testifies as to the possibility of the alleged father's paternity, especially if the report of that expert is co-signed by two other experts, one of whom was also available for cross-examination.
Under this record, we do not find any error in the admitting of the expert evidence. The court did not abuse its discretion under the statute by admitting blood test evidence.

PREPONDERANCE OF THE EVIDENCE
Plaintiff has the burden of proving defendant's paternity of the child by a preponderance of the evidence. Succession of Washington, 308 So.2d 892 (La.App. 2d Cir.1975); State v. Sharplin, 431 So.2d 864 (La.App. 2d Cir.1983). Defendant argues that the state did not prove him to be the father by that standard. We do not agree.
We do not disturb a trier of fact's determination of factual and credibility issues in the absence of manifest error. Reck v. Stevens, 373 So.2d 498 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
State v. Wiggins, 409 So.2d 1264 (La. App. 2d Cir.1982) does not support defendant's argument that expert evidence of blood test results and testimony of the mother that defendant is the father of the child is not legally sufficient to constitute a preponderance of the evidence.
The Wiggins defendant introduced evidence which contradicted the mother's testimony. The Wiggins defendant denied his paternity of the child, denied that he had ever given the child money or other things, and asserted that after the birth of the child there had been no relationship between him and either the mother or the child. The Wiggins defendant also produced evidence to show that the mother was a woman of "dissolute manners," both before and after her delivery of the child in question. See CC Art. 210 before Act 549 of 1980. Defendant was present and cross-examined the witnesses in Wiggins. Wiggins did not specify the type of blood evidence there under consideration or explain the qualification or substance of the expert testimony as does this record.
The expert evidence that there was a 99.6 percent probability that defendant was the father is unrebutted. The testimony of the mother that defendant is the father of the child and about the particulars of the child/father relationship is not contradicted.
Defendant's admissions in his answers to the interrogatories and the totality of all the evidence convince us that the trial court did not err in declaring defendant to be the natural father of the child.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] "The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court."