Hillsborough-northern judicial district
No. 95-772

ERICA U. BODWELL *& a.*

v.

TROY BROOKS

December 23, 1996

*Blodgett, Makechnie & Vetne*, of Newburyport, Massachusetts (*John H. Vetne* on the brief and orally), for the intervenor, Mark Bodwell.

*Troy Brooks, pro se*, filed no brief.

*Debra Owen Stanley*, of Concord, joined in the intervenor's brief and orally, as guardian ad litem for the minor child.

HORTON, J. This case involves conflicting claims for custody of a minor child brought by his biological mother, Erica U. Bodwell; her husband, Mark Bodwell; and the child's biological father, Troy Brooks. Mark Bodwell appeals a decree of the Superior Court (*Groff*, J.) approving the marital master's (*Deborah Kane Rein*, Esq.) ruling that as the child's stepfather, Mark Bodwell lacks standing to assert any legal rights, including custodial rights, toward the child. We reverse and remand.

Erica and Mark Bodwell were married in June 1989 and divorced in October 1992. While the couple was separated in May 1992, Erica had a relationship with Troy Brooks and became pregnant with the child. During the subsequent divorce proceedings, Mark first asserted the illegitimacy of the unborn child but later withdrew the allegation. The divorce decree did not address the issue of paternity. Shortly after the child's birth in February 1993, Erica and Mark renewed cohabitation and eventually remarried in August 1993.

Also in February 1993, Erica filed a domestic violence and paternity petition against Brooks, which named him as the child's biological father. Brooks did not file an answer to the petition but affirmatively acknowledged his paternity. In June 1993, the superior court dismissed Erica's domestic violence petition. In early August 1993, Erica filed a motion to dismiss (voluntary nonsuit) her remaining claims. Shortly thereafter Brooks filed a motion for legal custody. Also in August 1993, Mark Bodwell filed an affidavit avowing his paternity of the child. He moved to intervene and to dismiss Erica's paternity claim on the grounds that it was barred by res judicata and collateral estoppel based on the divorce decree. In addition, Mark joined Erica in arguing that Brooks lacked standing and that his claims of paternity or custody should be dismissed. In June 1994, the superior court by order confirmed Brooks' standing to proceed on his cross-petition for paternity. At a status conference held thereafter, the Bodwells informed the court that the child's biological paternity would not be contested. The court thereupon

appointed a guardian ad litem to address "[the child's] best interests and his legal relationship to all three parties."

In May 1995, the court ordered the parties to file memoranda on whether the court had jurisdiction to award joint legal custody to Erica, the natural mother, and Mark, her husband and the child's stepfather. Later that month Brooks filed a motion for physical custody of the child.

The superior court ruled that based on RSA 522:5, the New Hampshire Uniform Act on Blood Tests to Determine Paternity statute, Mark's legal paternity status was rebutted as a matter of law once Brooks' biological paternity was established. The court held that "Mr. Bodwell lacks standing to assert any *legal* rights, including custodial rights, toward" the child. Although the superior court held it had jurisdiction to determine custody between the natural parents, the court concluded that Mark's efforts to seek a legal or custodial relationship with the child must be brought in probate court.

On appeal, Mark contends that the superior court erred in ruling that his status as legal father of the child was terminated when Brooks' status as the biological father was ascertained. Mark also argues that even if his legal status is only that of a stepfather, the superior court erred in ruling that it lacks jurisdiction to include him in physical and legal custody determinations based on the best interests of the child.

■ Under the common law and by statute, children conceived or born during a lawful marriage are presumed to be legitimate. *See* RSA 522:5 (1974); RSA 458:23 (1992); *State v. Sargent*, 100 N.H. 29, 30, 118 A.2d 596, 597 (1955); *Saunders v. Fredette*, 84 N.H. 414, 416, 151 A. 820, 820 (1930). It is undisputed that the child was conceived during the lawful marriage of Erica and Mark. It is also clear that although Mark raised questions regarding the child's paternity during the divorce proceedings, he did not pursue this claim, and the divorce decree did not address his paternity. *See* RSA 458:23. He later specifically avowed his paternity of the child. In the first instance then, the child is presumed to be the Bodwells' legitimate child.

■■ The presumption of legitimacy can be rebutted in certain circumstances. *See* RSA 522:5; RSA 458:23; *Watts v. Watts*, 115 N.H. 186, 188, 337 A.2d 350, 352 (1975); *Sargent*, 100 N.H. at 30, 118 A.2d at 597; *Saunders*, 84 N.H. at 416, 151 A. at 820-21. It "may be rebutted under our common law by satisfactory proof that the husband is not the father of the child." *Sargent*, 100 N.H. at 30-31, 118 A.2d at 597. Evidence to rebut the presumption may include

blood tests, testimony by experts or others, medical or scientific evidence, and statistical probability evidence. *See* RSA 522:4 (Supp. 1996), :4-a (Supp. 1996), :5. It may also include "proof of a voluntary acceptance of parental responsibility by an individual; the establishment of an estoppel by one charged with the paternity because of his failure to question it after a substantial period of uninterrupted acquiescence" and "physical resemblance between the child and the putative father." *Hansen v. Hansen*, 119 N.H. 473, 475, 402 A.2d 1333, 1334 (1979) (quotations omitted). The degree of proof necessary to rebut the presumption is clear and convincing evidence. *Watts*, 115 N.H. at 188, 337 A.2d at 352.

■ The superior court found Brooks' biological fatherhood established on the basis of the Bodwells' concession of his paternity. Acknowledgements of paternity by both the natural mother and presumed father may constitute clear and convincing evidence sufficient to rebut the presumption of legitimacy. *See State, Dept. of Revenue, CSED v. A.H.*, 880 P.2d 1048, 1050 (Alaska 1994). Although at common law both the husband and wife were incompetent to testify to the husband's non-access when it would tend to bastardize a child conceived or born during their marriage, *Goodright v. Moss*, 98 Eng. Rep. 1257, 1257 (1777); *Sargent*, 100 N.H. at 31, 118 A.2d at 598, the Bodwells' concession of Brooks' fatherhood does not constitute testimony of non-access as we have interpreted it. *See Sargent*, 100 N.H. at 31-32, 118 A.2d at 597 (sustaining husband's exception to admission of wife's testimony that she and husband had no sexual relations during possible period of conception). The Bodwells' recognition of Mr. Brooks' undisputed status as the natural father of the child supplies the clear and convincing evidence necessary to rebut the presumption and dispenses with the need to provide further proof of Brooks' paternity. Therefore, Mark's legal status became that of a stepfather.

Mark urges us to adopt a form of dual paternity, which would allow a putative biological father to establish a filial relationship with his child while not otherwise affecting the presumed father's relationship with the child. We decline to do so. The United States Supreme Court has stated that "the claim that a State must recognize multiple fatherhood has no support in the history or traditions of this country." *Michael H. v. Gerald D.*, 491 U.S. 110, 131 (1989). Although we are cognizant that our sister State Louisiana judicially provides for dual paternity, we decline to adopt such a notion. *See Smith v. Cole*, 553 So. 2d 847, 854-55 (La. 1989). The Louisiana judiciary itself has recognized that "the rights and obligations which evolve from the legal fiction of dual paternity are

not well defined and perhaps the whole concept should be reconsidered." *Smith v. Dison*, 662 So. 2d 90, 94 (La. Ct. App. 1995).

We next address Mark's claim that even if his status is that of a stepparent, the superior court has jurisdiction to include him in a custody determination with the natural parents in the best interests of the child. The superior court's jurisdiction to award custody is purely statutory. *Stetson v. Stetson*, 103 N.H. 290, 291, 171 A.2d 28, 29 (1961). RSA 458:17 vests the superior court with the ability to make child custody determinations only in cases "where there shall be a decree of divorce or nullity." RSA 458:17, I (Supp. 1996); *see McLaughlin v. Mullin*, 139 N.H. 262, 264-65, 651 A.2d 934, 936 (1994).

In *Ellsworth v. Heath*, 140 N.H. 833, 678 A.2d 138 (1996), however, we held that a custody dispute between the unwed natural parents fell within the superior court's general jurisdiction. *Id.* at 837, 678 A.2d at 140. Under *Ellsworth*, the superior court has jurisdiction over the custody proceeding as between Erica Bodwell and Brooks. Having obtained jurisdiction over the subject matter, the superior court also has the authority to include, as an intervenor, a stepparent who is married to the natural parent in the custody determination if the court finds that inclusion would serve the child's best interests.

"[W]e have made the best interests of the child the beacon by which to guide all custody matters." *Roberts v. Ward*, 126 N.H. 388, 392, 493 A.2d 478, 481 (1985). It is primarily the interests of the child, not those of other relatives or parties, which are protected. *See Preston v. Mercieri*, 133 N.H. 36, 42, 573 A.2d 128, 132 (1990); *Roberts*, 126 N.H. at 393, 493 A.2d at 482. As instrumentalities of the State, the courts possess *parens patriae* power to protect the interests of the child in custody determinations. *See Roberts*, 126 N.H. at 392, 493 A.2d at 481-82; *see also* BLACK'S LAW DICTIONARY 1114 (6th ed. 1990). Once the superior court has acquired jurisdiction over a custody proceeding between unwed natural parents, it may use its *parens patriae* power to decide whether the best interests of the child warrant the intervention of a stepfather as an appropriate party in the custody determination.

In its decree the superior court also concluded that Mark Bodwell lacked standing to assert any legal rights vis-a-vis the child. We disagree.

In certain circumstances, we have recognized that an individual who is not the natural parent of the child may assert legal rights with respect to that child. The New Hampshire Legislature and Judiciary have consistently expanded the rights and duties of

stepparents. *See* RSA 546-A:3 (1974) (obligation of stepparents to support stepchildren); RSA 458:17-c (1992) (stepparent authority to make emergency medical decisions); RSA 86:6, II(h) (Supp. 1996) (permitting stepchildren and their spouses to inherit tax-free from stepparents); *Ruben v. Ruben*, 123 N.H. 358, 362, 461 A.2d 733, 735 (1983); *Logan v. Logan*, 120 N.H. 839, 842-43, 424 A.2d 403, 404-05 (1980). Statutory and case law support the right of stepparents to seek custody or visitation of children in some situations. *See* RSA 458:17, VI; *Stanley D. v. Deborah D.*, 124 N.H. 138, 467 A.2d 249 (1983). Moreover, in the divorce context we recognized the power of the court to award custody to a stepparent in preference even to a natural parent based on the best interests of the child. *Stanley D.*, 124 N.H. at 142, 467 A.2d at 251.

■ One of the instances in which an individual may assert legal rights to a child not biologically his own is if that person stands *in loco parentis* toward the child. *See Whitaker v. Warren*, 60 N.H. 20 (1880). Mr. Bodwell argues, and we are persuaded, that his role as an *in loco parentis* stepparent entitles him to assert legal rights with respect to the child in a custody proceeding.

By acting *in loco parentis*, an individual admits the child into his family and treats the child as a family member. *See In re Diana P.*, 120 N.H. 791, 794-95, 424 A.2d 178, 180 (1980), *cert. denied*, 452 U.S. 964 (1981). Mark Bodwell's actions since just after the child's birth demonstrate that he has acted *in loco parentis* toward the child. For several years he has raised the child as his own son and provided both financial and emotional support. The guardian ad litem also testified that Mark and the child had formed a psychological parent-child relationship. Although the assumption of *in loco parentis* status is voluntary, while the relationship exists an individual is "charged, factitiously, with a parent's rights, duties, and responsibilities." BLACK'S LAW DICTIONARY, *supra* at 787. "A stepparent, by reason of the relation merely, has no right to the custody and control of his or her stepchildren, but the stepparent may be entitled thereto if there arises the status of loco parentis to the children." 67A C.J.S. *Parent & Child* § 160 (1978) (footnotes omitted).

■ Because *Stanley D.* establishes a stepfather as one of the persons to whom custody may be granted based on the best interests of the child, because Mr. Bodwell has a statutory duty to support the child as his stepchild, and because of his long role *in loco parentis* toward the child, Mr. Bodwell may be entitled to assert legal rights with respect to the child and has standing in this custody action. We agree with Mr. Bodwell that it would make little

sense to permit stepparents to seek custody only in the event of divorce proceedings, while withholding such rights when the traditional unitary family still exists. *See Stanley D.*, 124 N.H. at 141, 467 A.2d at 250; *cf. Roberts*, 126 N.H. at 392, 493 A.2d at 481 (shortsighted to consider child's interest by granting grandparents visitation upon divorce, but not where traditional two parent family never existed).

In holding that an *in loco parentis* stepfather can be a party to a custody proceeding between the natural parents in the superior court, we emphasize that we do not wish to exclude the biological father from the custody determination, but merely to permit inclusion of the stepfather who has acted, in this case, as a longtime caretaker and the child's psychological parent. Which party or parties are ultimately entitled to custody of the child must be judicially ascertained among all relevant individuals using the best interests of the child as the primary guide. We therefore remand the case for a hearing to determine custody consistent with the best interests of the child.

*Reversed and remanded.*

All concurred.