Grafton
No. 82-344

GEORGE C. RUBEN

v.

FAITH M. RUBEN

June 7, 1983

*McNamara, Larsen & Schuster P.A.*, of Lebanon (*Margaret K. Wheeler* on the brief, and *Mark A. Larsen* orally), for the plaintiff.

*K. William Clauson*, of Hanover, by brief and orally, for the defendant.

BATCHELDER, J. In this divorce action, the defendant appeals the Trial Court's (*Johnson*, J.) approval of the Master's (*William E. Lovejoy*, Esq.) report which recommended that the marital home be sold, that the equity be equally divided between the parties, and that support not be provided for the defendant's child by a previous marriage. We affirm.

In 1972, the plaintiff, George C. Ruben, and the defendant, Faith M. Ruben, were married in California, where the plaintiff was working toward a Ph.D. degree. Shortly after the marriage, the plaintiff was awarded his degree. The Ruben family then moved to Ithaca, New York, where the plaintiff worked as an electron microscopist at Cornell University. In 1977, Dr. Ruben was offered a similar position at Dartmouth Medical School, and the Rubens moved to Hanover, New Hampshire. The record indicates that during the marriage Dr. Ruben never earned more than $22,000 a year. The record also indicates that Mrs. Ruben was employed throughout most of the marriage as an insurance administrator, and at the time of the divorce Mrs. Ruben's annual salary was $16,000. During the marriage, Mrs. Ruben had custody of her daughter by a previous marriage and received child support from the natural father.

The primary marital asset was the family home in Hanover, which at the time of the divorce had a market value of $125,000 with equity of approximately $54,000.

In 1981 Dr. Ruben filed for divorce on the basis of irreconcilable differences. *See* RSA 458:7-a (Supp. 1979). A hearing was held before a master, who made findings and recommendations as to the division of property. Specifically, the master denied Mrs. Ruben's request for findings that the value of Dr. Ruben's profession should be considered as an asset in making a property award and that Dr. Ruben had an obligation to support Mrs. Ruben's daughter because she was the plaintiff's stepchild. In this appeal, Mrs. Ruben argues that the master erred in failing to award her the house outright, and in failing to require the plaintiff to make payments for the support of her daughter.

A master has broad discretion in making findings as to the distribution of marital property and the award of alimony, and we will not disturb such findings absent a showing of abuse of discretion or error of law. *Henderson v. Henderson*, 121 N.H. 807, 809, 435 A.2d 133, 135 (1981); *see Rahn v. Rahn*, 123 N.H. 222, 225, 459 A.2d

268, 269 (1983). In allocating property the court must consider the total economic circumstances of both parties at the time of the divorce hearing. *See Lawlor v. Lawlor*, 123 N.H. 163, 166, 459 A.2d 238, 241 (1983). Economic considerations include the income and assets of the parties, their liabilities, the respective contributions of the spouses in terms of services and money, the parties' health and their respective abilities to be self-supporting. *Rahn v. Rahn*, 123 N.H. at 226, 459 A.2d at 270; *Murano v. Murano*, 122 N.H. 223, 227–28, 442 A.2d 597, 600 (1982). The consideration of these economic factors aids the master in his task of devising an equitable distribution of the marital assets. *See Grandmaison v. Grandmaison*, 119 N.H. 268, 271, 401 A.2d 1057, 1059 (1979).

In denying Mrs. Ruben's request that the value of the plaintiff's professional career be found to be a marital asset, the master stated that he found "no general scheme of contribution by the Defendant toward Plaintiff's education and advancement of career." The master, however, equally divided the equity interest in the marital home after Mrs. Ruben had been reimbursed for her family's contribution toward the downpayment on the real estate.

■ Some jurisdictions take into consideration, when dividing property, the fact that one spouse may have contributed financially to the education of the other spouse, *see In re Marriage of Horstmann*, 263 N.W.2d 885, 891 (Iowa 1978), while others hold that a person's earning capacity, even where enhanced by the possession of a graduate degree paid for in part by another spouse, should not be recognized as a separate item of property. *Stern v. Stern*, 66 N.J. 340, 345, 331 A.2d 257, 260 (1975). We believe that the better rule is that a graduate degree acquired by one spouse during the course of a marriage is not considered an asset subject to division upon dissolution of the marriage; rather, it is "simply an intellectual achievement that *may potentially assist* in the future acquisition of property." *In re Marriage of Graham*, 194 Colo. 429, 432, 574 P.2d 75, 77 (1978) (emphasis added).

■ The record indicates that the master did in fact consider the plaintiff's profession and education, but did not find that the defendant had any quantifiable interest as would be evidenced by specific contributions toward educational and professional advancement. We find no error in the master's ruling. The trier of fact is not required to speculate as to the potentially greater earnings someone with a professional degree may achieve where his or her previous salary history in the same profession indicates modest earnings. *Cf. Lawlor v. Lawlor*, 123 N.H. at 166, 459 A.2d at 240 (a vested, but undistributed, legacy of a certain sum is properly considered in

determining an equitable division of property). Moreover, upon review of the record in this case, we find no abuse of discretion by the master in recommending that the family home be sold and that the equity be divided equally between the plaintiff and the defendant. *See Murphy v. Murphy*, 116 N.H. 672, 674–75, 366 A.2d 479, 482 (1976).

As previously mentioned, the defendant also contends that the master erred when he denied the request to order payment of support for the defendant's daughter, who is the stepchild of the plaintiff. The defendant relies upon New Hampshire law which provides that stepparents have a statutory duty to support their stepchildren in a manner co-extensive with their obligation to support their natural children. *Logan v. Logan*, 120 N.H. 839, 842, 424 A.2d 403, 404–05 (1980); *see* RSA 546-A:1, IV; :2.

At common law there was no obligation to support a stepchild, and only recently has such an obligation been imposed by statute in a few jurisdictions. Annot., 75 A.L.R.3d 1129, 1132 (1977). The majority of those jurisdictions imposing an obligation to support stepchildren by statute have held that the obligation is collateral to the existence of a valid marriage and that once the marriage is dissolved, the stepparent relationship ceases and with it the obligation to support the stepchild. *See Swain v. Swain*, 250 Cal. App. 2d 1, 7, 58 Cal. Rptr. 83, 87 (1967); *Kaiser v. Kaiser*, 402 N.Y.S.2d 171, 173 (Fam. Ct. 1978); *see also* Annot., 90 A.L.R.2d 583 (1963).

We agree with those jurisdictions, and hold that upon the dissolution of a marriage, absent a valid adoption, a stepparent's duty to support a stepchild pursuant to RSA chapter 546-A ceases, because the stepparent relationship ceases upon dissolution of the marriage.

*Affirmed.*

BOIS, J., did not sit; the others concurred.