# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00276-SCT

*AUDRA MARIAN GUY*

*v.*

*ROBERT SIDNEY GUY, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/1997 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN, JR. |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARTIN A. KILPATRICK |
| ATTORNEY FOR APPELLEE: | WILLIAM R. STRIEBECK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 4/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/13/99 |

**BEFORE PITTMAN, P.J., BANKS AND MILLS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Robert Sidney Guy, Jr. (hereinafter Rob) and Audra Marian Guy (hereinafter Audra) were married May 14, 1994. They were separated on April 12, 1997. No children were born to the couple. The couple was awarded a divorce on the grounds of irreconcilable differences on November 20, 1997.

¶2. In the final judgment of divorce, the chancellor attempted to distribute equitably the couple's marital assets. In doing so, he valued Audra's nursing degree, which she had obtained during the marriage, at $35,000. The Chancellor credited that $35,000 value amount to Audra's portion of the marital assets.

¶3. The chancellor assigned the value of $35,000 to Audra's nursing degree as a result of Rob testifying that this was the amount he spent on Audra's expenses and support while she pursued and completed her nursing degree during the couple's brief marriage.

¶4. Audra filed a Motion to Alter or Amend Judgment, or, alternatively, for Relief from Judgment which the Chancellor denied on February 2, 1998. Thereafter, Audra timely perfected this appeal.

¶5. Audra raises the following assignments of error on this appeal:

**I. THE CHANCELLOR ERRED IN INCLUDING AUDRA'S NURSING DEGREE AS A "MARITAL ASSET."**

**II. THE COST OF AUDRA'S NURSING DEGREE CANNOT BE REIMBURSED TO ROB AS LUMP-SUM ALIMONY.**

**III. THE TRIAL COURT ERRED IN THE MANNER OF VALUING THE NURSING DEGREE.**

### DISCUSSION OF THE LAW

¶6. These issues will be addressed together. The novel question presented in this appeal is whether a professional degree is marital property. This is a question of first impression before this Court. This is a question of law which will be reviewed de novo by this Court. *Mauney v. State ex rel. Moore*, 707 So.2d 1093, 1095 (Miss., 1998); *Snapp v. Harrison*, 699 So.2d 567, 569 (Miss., 1997) (citing *Mississippi Farm Bureau Cas. Ins. Co. v. Curtis*, 678 So.2d 983, 987 (Miss., 1996); *Seymour v. Brunswick Corp.*, 655 So. 2d 892, 895, Prod.Liab.Rep. (CCH) P 14, 228 (Miss., 1995)).

¶7. Although there is no Mississippi case directly on point, the seminal Mississippi case regarding equitable division of marital property is *Ferguson v. Ferguson*, 639 So.2d 921, 928 (Miss., 1994), where we held,

> [T]his Court suggests the Chancery courts consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
>
> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> . . . .
>
> c. **Contribution to education,** training or other accomplishment bearing on the earning power of the spouse to accumulating the assets.
>
> . . . .

*Id.* While *Ferguson* certainly did not list a professional degree as marital property to be equitably divided, it did list the contribution made by the supporting spouse to the attainment of that degree by the other spouse to be at least considered when equitably dividing the marital assets. *Id.*

¶8. We also look to our sister states whose courts have specifically addressed this issue. As with most legal issues, the jurisdictions are split. Nevertheless, there is a clear majority and minority position as to whether professional degrees are to be considered marital property. Eighteen jurisdictions have held that a spouse's degree was not a marital asset.[1] The minority approach, followed by some courts in three jurisdictions (most notably New York) is that a professional degree is marital property.[2]

¶9. The reason that most states have determined that professional degrees are not marital property is best articulated by the Colorado Supreme Court in *In re Marriage of Graham*, 574 P.2d 75 (Colo. 1978), where that Court stated:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of

the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

574 P.2d at 77.

¶10. We join the majority of states and hold that professional degrees are not marital property. In the present case, Audra's nursing degree is not marital property. Her nursing license is not a chattel which can be divided or assigned. Rob may not share in it. The nursing degree and license may only be issued to a qualified holder. We do not intend "property" in the sense of "marital property" to include intellectual or technical mental enhancement gained during the course of a marriage. However, the analysis does not end here because

> [T]here is . . . clear agreement that the contributing spouse should be entitled to some form of compensation for the financial efforts and support provided to the student spouse in the expectation that the marital unit would prosper in the future as a direct result of the couple's previous sacrifices.

*In re Marriage of Weinstein*, 128 Ill.App.3d 234, 470 N.E.2d 551, 557, 83 Ill.Dec. 425 (Ill.App. 1 Dist., 1984) (citations omitted).

¶11. We recognize the potential inequity of a situation such as the present one, where one spouse works full-time to put the other spouse through school where they obtain a college degree. After obtaining this degree at the expense and sacrifice of the supporting spouse, the supported spouse leaves the supporting spouse with nothing more than the knowledge that they aided their now ex-spouse in increasing his/her future earning capacity. This sentiment is echoed by the New Jersey Supreme Court in *Mahoney v. Mahoney*, 453 A.2d 527 (N.J. 1982). There the New Jersey Supreme Court stated:

> [E]very joint undertaking has its bounds of fairness. Where a partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.
>
> . . . .
>
> Furthermore, it is realistic to recognize that . . . a supporting spouse has contributed more than mere earnings to her husband with the mutual expectation that both of them - she has well as he - will realize and enjoy material improvements in their marriage as a result of his increased earning capacity. Also, the wife has presumably made personal sacrifices, resulting in a reduced or lowered standard of living. Additionally, her husband, by pursuing preparations for a future career, has foregone gainful employment and financial contributions to the marriage that would have been forthcoming had he been employed. He thereby has further reduced the level of support his wife might otherwise have received, as well as the standard of living both of them would have otherwise enjoyed. In effect, through her contributions, the supporting spouse has consented to live at a lower material level while her husband

has prepared for another career. She has postponed, as it were, present consumption and a higher standard of living, for the future prospect of greater support and material benefits. The supporting spouse's sacrifices would have been rewarded had the marriage endured and mutual expectations of both of them been fulfilled. The unredressed sacrifices - loss of support and reduction of the standard of living - coupled with the unfairness attendant upon the defeat of the supporting spouse's shared expectation of future advantages, further justify a remedial reward. In this sense, an award that is referable to the spouse's monetary contribution to her partner's education significantly implicates basic considerations of marital support and standard of living - factors that are clearly relevant in the determination and award of conventional alimony.

*Id.* at 533-34.

¶12. The Supreme Court of Pennsylvania has similarly observed:

While we agree . . . that marriage is not a business enterprise in which strict accountings are to be had for moneys spent by one spouse for the benefit of the other, it appears to us that this case does not involve strict accountings, but gross accountings. Supporting spouses in these cases feel entitled to reimbursement, we believe, not because they have sacrificed to support the other spouse, but because they are, to use a strong word, 'jettisoned' as soon as the need for their sacrifice, albeit in part a legal obligation, comes to an end. In retrospect, perhaps unintentionally, the supporting spouse in such a case can be said to have been 'used.' At least this is the perception of the supporting spouse, and we believe that this perception is not totally without foundation in all cases . . . [T]he supporting spouse in a case such as this should be awarded equitable reimbursement to the extent that his or her contribution to the education, training or increased earning capacity of the other spouse exceeds the bare minimum legally obligated support . . . .

*Bold v. Bold*, 524 Pa. 487, 574 A.2d 552, 556 (Pa., 1990).

¶13. We return to the words of the Supreme Court of New Jersey on this issue,

**Marriage should not be a free ticket to professional education** and training without subsequent obligations . . . One spouse ought not to receive a divorce complaint when the other receives a diploma. Those spouses supported through professional school should recognize that they may be called upon to reimburse the supporting spouses for the financial contributions they received in pursuit of their professional training. And they cannot deny the basic fairness of this result.

*Mahoney*, 453 A.2d at 535 (emphasis added & footnotes omitted).

¶14. In the present case we adopt the majority approach in recognizing the need for equitable reimbursement of the supporting spouse. Rob may be entitled to lump sum alimony to replace any investment by him in the degree. As this Court has noted, ". . . the chancellor may divide marital assets, real and personal, as well as *award periodic and/or lump sum alimony, as equity demands*." *Ferguson*, 639 So.2d at 929 (emphasis added.)

¶15. The next question is how should chancellors go about doing this? The Supreme Court of Appeals of West Virginia allows reimbursement alimony. In *Hoak v. Hoak*, 179 W.Va. 509, 370 S.E.2d 473, 477-78 (W. Va., 1988), the Supreme Court of Appeals of West Virginia stated,

As the name indicates, reimbursement alimony is designed to repay or reimburse the supporting spouse for his or her financial contributions to the professional education of the student spouse. Unlike an award based on the value of a professional degree, reimbursement alimony is based on the actual amount of contributions, and does not require a judge to guess about future earnings, inflation, the relative values of the spouses' contributions, etc. . . . . . . .

We therefore conclude that the trial judge in a divorce proceeding may in an appropriate case award reimbursement alimony to a working spouse who contributed financially to the professional education of a student spouse, where the contribution was made with the expectation of achieving a higher standard of living for the family unit, and the couple did not realize that expectation due to divorce.

¶16. We adopt a similar approach, allowing the supporting spouse to be reimbursed for putting the student spouse through school where the supported spouse obtained a degree and then leaves the supporting spouse. Audra's argument that the $35,000 consisted of housing, food, and clothing expenses in addition to books and tuition is irrelevant. We recognize that it takes more than books and tuition money to attend school and obtain a higher education. Housing, clothing, and food must also be paid for in order to attend a university.

¶17. Here, the simple facts are that Rob worked while Audra studied. Within a month of Audra's receiving her nursing degree, she left Rob who had paid the majority of the bills for the couple during the entire marriage during which Audra was a student including many of her school fees and expenses. Audra's degree is not marital property and on that point, the chancellor is reversed. However, it would be inequitable for Rob to have paid for Audra's education only to have her leave the marriage. Therefore if Rob can produce sufficient evidence that he did in fact pay for Audra's education, he is entitled to be reimbursed. In *Robinson v. Irwin*, 546 So.2d 683, 686 (Miss., 1989), we dealt with a similar situation and reversed for insufficient lump-sum alimony. We recognize the right a supporting spouse has to be compensated or reimbursed for the contributions he/she has made in cases where one spouse supports the other through school and is then divorced after the supported spouse earns a degree.

¶18. Rob's proof that he invested $35,000 in Audra's nursing education was insufficient. We require greater proof than was introduced here -- Rob's estimate that he spent $35,000 in aiding Audra in obtaining her nursing degree.

## CONCLUSION

¶19. A professional degree obtained by a student spouse during a marriage is not marital property. Nevertheless, we recognize that the supporting spouse has a right to be compensated or reimbursed, upon proper proof, for his or her financial contributions to the professional education of the student spouse.

¶20. For these reasons, we reverse the judgment below in part to the extent that it divided marital property including a $35,000 value to Audra's nursing degree, and we remand this case for (1) a determination, upon appropriate proof, of the amount of lump-sum alimony, if any, which would adequately reimburse Rob for his expenditures towards Audra's attaining her nursing degree and (2) a recalculation of the division of marital property.

¶21. **REVERSED AND REMANDED.**

**SULLIVAN, P.J., BANKS, SMITH AND MILLS, JJ., CONCUR. WALLER, J., DISSENTS**

**WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. COBB, J., NOT PARTICIPATING.**

**WALLER, JUSTICE, DISSENTING:**

¶22. Historically we have divided marital assets based on the composition of the estate at the time of separation. We require chancellors to review the makeup of the marital estate and equitably divide the parties' assets based on our decision in ***Ferguson v. Ferguson***, 639 So. 2d 921 (Miss. 1994), and its progeny.

¶23. Today's majority sets a dangerous precedent by allowing reimbursement alimony to be paid to one spouse for contributions by that spouse to the costs of the other spouse's professional degree. Contributions to the educational costs of a spouse should be considered only as part of a ***Ferguson*** equitable distribution analysis. Today's decision in effect creates a separate category for contributions made by one spouse to the other spouse's education. Today's decision also ignores the fact that *both* parties contributed to the marriage. Just because Rob worked while Audra went to school does not mean Audra made less significant contributions to the marriage. *See **Hemsley v. Hemsley***, 639 So. 2d 909, 915 (Miss. 1994) ("We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.").

¶24. To be sure, Rob is entitled to consideration of his payments toward Audra's education in the context of an equitable distribution of the couple's property. He is not, however, entitled to a dollar-for-dollar reimbursement of those costs as alimony.

¶25. For these reasons, I respectfully dissent.

**PRATHER, C.J., JOINS THIS OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26. I concur with the majority solely as to results. In ***Ferguson***, we promulgated guidelines for the distribution of **marital assets** in which we stated that courts should consider the "contribution to the education, training or other accomplishments bearing on the earning power of the spouse to accumulate the assets." *See **Ferguson v. Ferguson***, 639 So. 2d 921, 928 (Miss. 1994). We regarded education as a marital asset, not an issue of alimony. Nonetheless, the majority feels that the nursing degree is an issue of alimony. This despite language in ***Ferguson***-part of which of the majority quotes-that clearly demonstrates that marital assets and alimony are distinct legal entities: "'[a]limony and equitable distribution are distinct concepts, . . .' Thus, the chancellor may divide marital assets, real and personal, as well as award periodic and/or lump sum alimony, as equity demands." *See **id.*** at 929 (citation omitted). Unfortunately, in placing the degree's value within the rubric of alimony, the majority eschews very recent precedent and ignores the equity ***Ferguson*** discusses.

¶27. In ***Kilpatrick v. Kilpatrick***, No. 97-CA-00550-SCT, 1999 WL 12799 (Miss. Jan. 14, 1999), we took an attorney's large fee from one case and made it a marital asset rather than income. There the law

dictated we should have found the fee to be income allocated as alimony whereas here the law dictates we should find the degree to be a marital asset subject to equitable distribution. Regardless, we should at least be consistent in our holdings. Accordingly, I concur in part and dissent in part.

1. (Arizona (*Pyeatte v. Pyeatte*, 135 Ariz. 346, 661 P.2d 196 (Ariz.App. Div. 1, 1982); *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (Ariz.App. Div. 1, 1981); California (*In re Marriage of Sullivan*, 134 Cal.App.3d 634, 184 Cal.Rptr. 796 (Cal.App. 4 Dist., 1982) (hearing granted); *In re Marriage of Aufmuth*, 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (Cal.App, 1 Dist., 1979), overruled on other grounds, *In re Marriage of Lucas*, 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (Cal., 1980); *Todd v. Todd*, 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (Cal.App. 3 Dist., 1969); Colorado (*In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (Colo. 1978); *In re Marriage of McVey*, 641 P.2d 300 (Colo.App., 1981); Connecticut (*Zahler v. Zahler*, Conn.Super.Ct. New Haven Dist. Aug. 5,1982), 8 Fam.L.Rptr. 2694); Delaware (*Wright v. Wright*, 469 A.2d 803 (Del.Fam.Ct., 1983)); Florida (*Hughes v. Hughes*, 438 So.2d 146 (Fla.App. 3 Dist., 1983); *Severs v. Severs*, 426 So.2d 992 (Fla.App.5 Dist.,1983)); Indiana (*In re Marriage of McManama*, 272 Ind. 483, 399 N.E.2d 371 (Ind., 1980); Iowa (*In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa, 1978); Kentucky (*Inman v. Inman*, 648 S.W.2d 847 (Ky., 1982); *McGowan v. McGowan*, 663 S.W.2d 219 (Ky.App., 1983); *Leveck v. Leveck*, 614 S.W.2d 710 (Ky.App., 1981); New Jersey (*Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527 (N.J., 1982); New Hampshire (*Ruben v. Ruben*, 123 N.H. 358, 461 A.2d 733 (N.H., 1983); New Mexico (*Muckelroy v. Muckelroy*, 84 N.M. 14, 498 P.2d 1357 (N.M., 1972); Oklahoma (*Hubbard v. Hubbard*, 603 P.2d 747 (Okla., 1979); Texas (*Frausto v. Frausto*, 611 S.W.2d 656 (Tex.Civ.App.-San Antonio, 1980); Wisconsin (*In re Marriage of Lundberg*, 107 Wis.2d 1, 318 N.W.2d 918 (Wis., 1982); Wyoming (*Grosskopf v. Grosskopf*, 677 P.2d 814 (Wyo., 1984).) See also Massachusetts (*Drapek v. Drapek*, 399 Mass. 240, 246, 503 N.E.2d 946, 950, 55 USLW 2523 (Mass., 1987)); Pennsylvania (*Hodge v. Hodge*, 513 Pa. 264, 268-69, 520 A.2d 15, 17, 55 USLW 2423 (Pa., 1986)).

2. See. *O'Brien v. O'Brien*, 66 N.Y.2d 576, 580-81, 489 N.E.2d 712, 713, 498 N.Y.S.2d 743, 744, 55 USLW 2348 (N.Y., 1985); *Daniels v. Daniels*, 165 Mich. App. 726, 731, 418 N.W.2d 924, 927 (Mich.App., 1988); *Reen v. Reen*, Mass.P. and Fam. Ct. Dec. 23, 1981).