# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CA-00502-COA

**THOMAS QUITMAN BRAME, JR.**                                          **APPELLANT**

**v.**

**SHERRYE POLK BRAME**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/1997 |
| TRIAL JUDGE: | HON. W. E. BEARDEN, JR. |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS QUITMAN BRAME, JR. |
| | THOMAS L. TULLOS |
| | JOHN N. SATCHER |
| ATTORNEY FOR APPELLEE: | L. WESLEY BROADHEAD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DIVORCE AWARDED APPELLEE ON GROUNDS OF ADULTERY; CHILD SUPPORT; PROPERTY DISTRIBUTION; ALIMONY |
| DISPOSITION: | AFFIRMED - 03/28/2000 |
| MOTION FOR REHEARING FILED: | 4/25/2000; denied 7/25/2000 |
| CERTIORARI FILED: | 9/15/2000; granted 12/21/2000 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

## PROCEDURAL HISTORY

¶1. This is an appeal from the Jasper County Chancery Court, Second District, wherein Thomas and Sherrye Brame were granted a divorce on December 10, 1997. Feeling aggrieved of the chancellor's findings in the final judgment of divorce, Thomas Brame now appeals to this Court.

## FACTS

¶2. Thomas Brame (Thomas) and Sherrye Polk Brame (Sherrye) were married on May 20, 1979, and lived in the Bay Springs, Mississippi, area during their marriage. Three children were born to this marriage: Melissa in 1981, Laura in 1982, and Thomas III in 1985. Sherrye filed for divorce on grounds of adultery, and after a four day trial, the final judgment of divorce was granted December 10, 1997.

¶3. At the time of their marriage, Thomas held a law degree and had been practicing law for four months in Bay Springs. Sherrye held a bachelors degree in management and was a pharmaceutical drug representative for Lemman Pharmaceutical. Both worked until 1981 when Sherrye quit work to stay home and raise their children. Sherrye returned to the workforce in 1995 after the couple separated.

¶4. In 1991, Thomas was diagnosed as having a medical condition that requires medication to control the symptoms. Medication for treating this incurable disease costs Thomas $1,000 per month.

¶5. In the judgment for divorce, the chancellor awarded Thomas primary custody of Melissa and Thomas III, and granted primary custody of Laura to Sherrye. Thomas was granted visitation rights with Laura, and Sherrye was granted the same with Melissa and Thomas III. Thomas was also ordered to pay Sherrye $500 per month in child support and ordered to pay one-half of non-insured medical expenses for Laura. Thomas was ordered to pay periodic alimony to Sherrye in the amount of $700 per month and ordered to pay $10,000 for Sherrye's attorney fees. Thomas was assigned $71,000 worth of debt.

¶6. Sherrye was also awarded title to the 1990 Mercury vehicle, one-half of Thomas's investment and retirement accounts, and her non-marital assets, including jewelry valued at $11,200. Sherrye retained her stock in a family drug store business and retained her one-third remainder interest in a family trust. Sherrye assumed $30,000 worth of debt.

¶7. Jointly, Thomas and Sherrye were ordered to sell different property they held together, namely the marital domicile, their motor home, and twenty acres of land. Thomas and Sherrye would split the net proceeds from each of these sales equally.

¶8. With this appeal, Thomas contests the chancellor's determination concerning what was and was not marital property, the valuation of certain assets, the division of property, the award of alimony and child support, and the chancellor's refusal to conduct post-trial hearings on his post-trial motions.

### ARGUMENT AND DISCUSSION OF THE LAW

### STANDARD OF REVIEW

¶9. In this petition, appellant Thomas Brame raises the following issues for our review:

**I. THE CHANCELLOR ERRED IN HIS DESIGNATION OF CERTAIN ASSETS AS MARITAL PROPERTY AND CERTAIN OTHERS AS NON-MARITAL PROPERTY.**

**II. THE CHANCELLOR ERRED IN HIS VALUATION OF CERTAIN ASSETS.**

**III. THE CHANCELLOR ERRED IN HIS DISTRIBUTION OF ASSETS BETWEEN THE PARTIES.**

**IV. THE CHANCELLOR ERRED IN AWARDING PERIODIC ALIMONY TO SHERRYE.**

**V. THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES TO SHERRYE.**

**VI. THE CHANCELLOR ERRED IN AWARDING CHILD SUPPORT WELL IN EXCESS OF THE STATUTORY GUIDELINES.**

**VII. THE CHANCELLOR ERRED IN FAILING TO CONSIDER ALL FINANCIAL AND PROPERTY AWARDS TOGETHER FOR EQUITY.**

**VIII. THE CHANCELLOR ERRED IN SUMMARILY DISMISSING ALL OF THOMAS'S POST-TRIAL MOTIONS WITHOUT A HEARING AND WITHOUT AN OPPORTUNITY TO MAKE A RECORD**.

¶10. The general rule regarding our standard of reviewing a chancellor is well-established: "We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Traxler v. Traxler,* 730 So. 2d 1098 (¶13) (Miss. 1998) (citations omitted). "Thus, on appeal, the chancellor's findings of fact, supported by credible evidence and not manifestly wrong, must be respected." *Black v. Black,* 741 So. 2d 299 (¶5) (Miss. Ct. App. 1999) (citing *Newsom v. Newsom*, 557 So. 2d 511 (Miss. 1990)).

¶11. With regard to alimony, the standard similarly requires we find manifest error to disturb the chancellor's decision.

> The chancellor's decision on alimony will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the court on appeal unless its findings were manifestly wrong.

*Tilley v. Tilley*, 610 So. 2d 348, 351 (Miss. 1992) (citations omitted).

¶12. When reviewing a chancellor's award of attorney fees in a domestic case, once again we respect the chancellor's use of discretion and only will disturb if we find manifest error or an abuse of such discretion.

> The issue of whether an attorney's fee should be awarded to one party in a divorce action is a question within the discretion of the chancellor. If based upon the appropriate standard, this decision will not be reversed upon appeal unless it is found to be manifestly erroneous. However, the chancellor's discretion is not without limits. "Attorneys' fees should not be awarded unless the chancellor finds that the party requesting attorney fees can establish an inability to pay."

*Magee v. Magee,* 724 So. 2d 1034 (¶30) (Miss. Ct. App. 1998) (citations omitted).

¶13. As noted further in this opinion, we find the chancellor was mistaken on a few minor issues in this case. However, applying the aforementioned standards of review to the issues Thomas raises with this appeal, we find no error in the chancellor's decision as would warrant our reversal. Accordingly, we affirm the chancellor.

**DISCUSSION OF THE ISSUES**

**I. THE CHANCELLOR ERRED IN HIS DESIGNATION OF CERTAIN ASSETS AS MARITAL PROPERTY AND CERTAIN OTHERS AS NON-MARITAL PROPERTY.**

¶14. Thomas argues the chancellor erred in classifying his law practice as a marital asset and also in designating a grandfather clock, a dining room table, and a baby grand piano as marital assets, as well.

¶15. First, regarding classification of the law practice as a marital asset, Thomas argues he owned his practice free and clear of indebtedness, and that the practice was established at the time of his marriage in 1979, thus exempting it from classification as a marital asset.

¶16. "The Mississippi Supreme Court has never held that a professional practice is an asset subject to the equitable distribution of marital assets dictated by *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994)." *Neville v. Neville*, 734 So. 2d 352 (¶¶13, 16) (Miss. Ct. App. 1999). In *Neville*, this Court found the chancellor was correct in not including the value of the husband's medical practice or license as a marital asset, for purposes of arriving at an equitable distribution of marital assets required under the *Ferguson* decision. *Id.* at (¶16). As well, in *Guy v. Guy*, 736 So. 2d 1042 (Miss. 1999), the Mississippi Supreme Court affirmed the majority view held in several other states in agreeing that a professional license is not a marital asset.

¶17. In the case *sub judice*, Thomas argues the chancellor erred in placing a value on his law practice, then in awarding the practice to Thomas as part of his "marital asset." As stated above, a professional license or practice cannot be part of an equitable distribution of marital assets. Thus, the chancellor erred in this regard. However, we find such error to be inconsequential to our ultimate ruling in this case, as described further in our analysis.

¶18. In addition to his law practice, Thomas also argues various household goods were erroneously classified as marital assets, namely gifts from his parents, including a grandfather clock, a dining room table, and a baby grand piano.

> Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage . . . We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor.

*Hemsley v. Hemsley*, 639 So. 2d 909, 914-15 (Miss. 1994).

¶19. "[T]he supreme court has held '[w]hen an individual commingles non-marital assets with joint marital assets, the non-marital assets are converted into marital assets, subject to an equitable distribution unless subject to an agreement to the contrary.'" *Parsons v. Parsons,* 741 So. 2d 302 (¶28) (Miss. Ct. App. 1999) (citing *Johnson v. Johnson*, 650 So. 2d 1281 (Miss. 1994)).

¶20. As stated, once a property becomes "commingled" in the marriage, it takes on the description of marital property. We certainly cannot presume the rest of Thomas's family did not make use of the piano, the clock, or the dining set. Thus, though such property may have originated as a gift to Thomas from his parents, once these items took on the new personna of full family use, they became marital property for the purposes of classification. The chancellor did not err in this regard.

## II. THE CHANCELLOR ERRED IN HIS VALUATION OF CERTAIN ASSETS.

¶21. Thomas argues the chancellor erred in his valuation of certain assets, including Sherrye's interest in the Polk testamentary trust, Sherrye's interest in the drug store corporation, and Thomas's law practice.

¶22. We first examine the trust. Sherrye's father set up the Polk testamentary trust, which contained $600,000. The trust provided that Edith Polk (Sherrye's mother) would have a life estate in the trust, including a power to invade the corpus. A trustee was set up to provide the wife with such support as the trustee deemed necessary to care for her.

¶23. Thomas's expert estimated Sherrye's worth in the trust to be $200,000, reasoning that Sherrye and her two siblings would each get one third of the trust at their mother's death. The expert also evaluated Mrs. Polk's financial circumstances, which, the expert intimated, were quite substantial, particularly since she was receiving medicare. He reasoned that barring unforeseen circumstances, Mrs. Polk would not need to deplete the entire trust to care for her needs during the remainder of her life.

¶24. Sherrye's expert refused to place a value on Sherrye's share of the trust as it was highly speculative what amount, if any, she would receive at her mother's death. The expert said at present, Sherrye's value in the trust was zero.

¶25. We concur with Sherrye's expert in finding the value of Sherrye's share of the trust to be too speculative to calculate. We add, also, that Sherrye's remainder interest in this trust is not vested until her mother's death. Therefore, to place a dollar figure on this contingent interest at this point would be much too speculative. The chancellor, who stated no reason for his evaluation, may have erred in placing the value of Sherrye's share of the trust at $40,000, but we will not reverse.

> As to issues of fact where no specific findings have been articulated by the chancellor, this Court proceeds upon the 'assumption that the chancellor resolved all such fact issues in favor of appellee,' or as a minimum in a manner which would be in line with the decree. '[I]f there be substantial evidence undergirding such a 'presumed finding', we will not disturb it.'

*Love v. Burnett*, 611 So. 2d 205, 207 (Miss. 1992) (citations omitted).

¶26. Next, regarding Sherrye's interest in the drug store, Sherrye's expert financial witness valued her twelve percent interest in the store to be $34,000 while Thomas's expert found Sherrye's interest to be worth $100,600. The chancellor set Sherrye's twelve percent interest at $60,000. Though, once again, the chancellor stated no reason for selecting this figure, it was approximately the midpoint between the two estimations; therefore, we do not find abuse of discretion here. Furthermore, the chancellor found that "Sherrye is not getting any income from Gene Polk, Inc. except a dividend of $1,000 some years. She obtains no income from the family trust."

¶27. The third area Thomas argues the chancellor erred is in the chancellor's valuation of Thomas's law practice. The chancellor ultimately ruled that Thomas's law practice was valued at $65,000 (Sherrye's expert has estimated $65,000 and Thomas's expert had estimated $50,000). At the trial, however, the parties stipulated that the value of the law practice was $33,000.

> Factual stipulations set boundaries beyond which this Court cannot stray. As stated in Corpus Juris Secundum: In the absence of grounds which will authorize a party to a stipulation to rescind or withdraw from it, . . . the courts, both trial and appellate, . . . are bound by stipulations in respect of matters which may validly be made the subject matter of stipulations. Courts are bound to enforce stipulations which parties may validly make, where they are not unreasonable or against good morals or sound public policy. Ordinarily they have no power to . . . go beyond the terms [of such

stipulations] . . . or to make findings contrary to the terms of a stipulation, or render a judgment not authorized by its terms.

*Wilbourn v. Hobson,* 608 So. 2d 1187, 1189 (Miss. 1992) (citations omitted). As stated in *Wilbourn*, the chancellor's setting the value of the law practice at $65,000 was beyond his authority, since the parties stipulated the value was $33,000. In light of previous finding in this opinion that the law practice was not a marital asset, however, we find this error in valuation essentially has no bearing on the result since the law practice should not have been considered when making equitable distribution of the marital property. Also, the chancellor subtracted the liabilities from the gross marital assets to arrive at a net worth of marital assets of $304,248. He further stated, "It is apparent that Sherrye did not get 50 percent of the marital assets. However, $65,000 of the difference is Thomas' law practice which is allotted to him." Sherrye's share of the marital assets totals $111,145, so that even without any consideration given to Thomas's law practice, she still does not receive fifty percent, so there is no need to consider whether the law practice was worth $65,000 or $33,000 as stipulated.

### III. THE CHANCELLOR ERRED IN HIS DISTRIBUTION OF ASSETS BETWEEN THE PARTIES.

¶28. Thomas argues the chancellor erred in awarding a grandfather clock and dining room table to Sherrye, both of which he claims his parents gave him as gifts. As well, Thomas argues the chancellor erred in distributing one-half of his retirement assets to Sherrye.

¶29. We first review the clock and table. As stated above, these items were rightly classified as marital property, and the chancellor is vested with the duty to equitably distribute the marital estate. "[A]ll awards should be considered together to determine that they are equitable and fair." *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994). The chancellor analyzed Thomas and Sherrye's marital assets using the *Ferguson* test and very specifically listed his property divisions for both Thomas and Sherrye. We cannot reason as to why the chancellor chose to award Sherrye the dining room table and the clock, but absent a showing this somehow was not fair and equitable, we will not disturb the chancellor's decision.

¶30. The second argument Thomas makes regards his retirement accounts. The chancellor awarded half of Thomas's IRA accounts and half of his deferred compensation[1] to Sherrye. As stated before, this income was acquired during the marriage, so it can be considered marital property.

¶31. "This Court has stated that in determining what is an equitable division, the chancellor is not limited to a consideration of the earning and cash contributions of each party to the accumulation of the property. It is sufficient contribution if one party renders services generally regarded as domestic in nature." *Draper v. Draper,* 627 So. 2d 302, 306 (Miss. 1993) (citations omitted). The domestic services rendered by Sherrye, foregoing any career advancement on her part, were of value to Thomas whether or not he acknowledges it. As Thomas's income earned during the marriage contributed to the his own well-being, as well as to support his wife and children, the chancellor's division of Thomas's IRA and investment accounts was proper. *See Prescott v. Prescott,* 736 So. 2d 409 (Miss. Ct. App. 1999); *Traxler v. Traxler,* 730 So. 2d 1098 (Miss. 1998); *Magee v. Magee,* 661 So. 2d 1117 (Miss. 1995).

### IV. THE CHANCELLOR ERRED IN AWARDING PERIODIC ALIMONY TO SHERRYE.

¶32. Thomas argues the chancellor erred in awarding periodic alimony to Sherrye. The chancellor reviewed the *Hemsley* factors in arriving at his conclusion to award periodic alimony.

In determining a reasonable award for alimony, the following factors should be considered:

(1) the health of the husband and his earning capacity;

(2) the health of the wife and her earning capacity;

(3) the entire sources of income of both parties;

(4) the reasonable needs of the wife;

(5) the reasonable needs of the child;

(6) the necessary living expenses of the husband;

(7) the estimated amount of income taxes the respective parties must pay on

their incomes;

(8) the fact that the wife has the free use of the home, furnishings and automobile, and

(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.

*Hemsley v. Hemsley,* 639 So. 2d 909, 912-13 (Miss. 1994) (citing *Brabham v. Brabham*, 226 Miss. 165, 84 So. 2d 147 (1955)).

¶33. The chancellor applied the *Hemsley* factors to the Brames's case and found, most specifically, that Thomas's income and earning capacity greatly exceed Sherrye's and that her assets were non- liquid. Taking the chancellor's analysis into consideration and noting the equitable distribution of assets, we review the chancellor's weighing of the *Hemsley* factors and find his decision to be without manifest error. We find the chancellor's award of periodic alimony was proper[(2)].

## V. THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES TO SHERRYE.

¶34. Thomas argues the chancellor erred in awarding attorney fees to Sherrye when he stated in his judgment that she had sufficient funds to pay. Thomas errs in interpreting the chancellor's statement. The chancellor awarded $10,000 for Sherrye to use toward the payment of her attorney fees, but this amount was her share of the airplane Thomas had sold. The airplane was sold for $20,000 and Sherrye was entitled to one half the proceeds from the sale, since the plane was marital property. Thomas misconstrues the chancellor's order to pay $10,000, but this is not an attorney fee award and need not be disturbed.

## VI. THE CHANCELLOR ERRED IN AWARDING CHILD SUPPORT WELL IN EXCESS OF THE STATUTORY GUIDELINES.

¶35. Thomas claims the chancellor's award of child support was errantly calculated. The chancellor awarded Sherrye $500 per month for Laura and refused to award child support to Thomas, saying the discrepancy in Thomas's income versus Sherrye's would not permit him such an award for the care of the other two children. Thomas also claims the chancellor failed to take into consideration Thomas's having a

medical condition that requires medication to control its symptoms, referring to his expert's testimony that Thomas's earning capacity would certainly suffer due to this disease.

¶36. In his opinion, the chancellor recorded a detailed description as to his reasonings in arriving at the child support amount, pursuant to the guidelines stated in Miss. Code Ann. § 43-19-101 (Supp. 1999). Thomas, in his argument, essentially asks us to re-weigh the facts and circumstances surrounding his and Sherrye's lifestyles since the divorce; however, it is not our prerogative to do so. "Where evidence conflicts, the Mississippi Supreme Court typically defers to the chancellor as fact finder." *Ligon v. Ligon,* 743 So. 2d 404 (¶5) (Miss. Ct. App. 1999) (citations omitted). Thus, we hold the finding of the chancellor is correct on this matter.

### VII. THE CHANCELLOR ERRED IN FAILING TO CONSIDER ALL FINANCIAL AND PROPERTY AWARDS TOGETHER FOR EQUITY.

¶37. Thomas argues with this issue that the chancellor erred in failing to consider all aspects of the financial settlement together (property settlement, alimony, child support, and attorney fees). Specifically, Thomas states that considered together, the burdens on him "do not do equity." For the reasons stated above in various issues, the chancellor did not err.

### VIII. THE CHANCELLOR ERRED IN SUMMARILY DISMISSING ALL OF THOMAS'S POST-TRIAL MOTIONS WITHOUT A HEARING AND WITHOUT AN OPPORTUNITY TO MAKE A RECORD.

¶38. Thomas filed several post-trial motions, most importantly a motion to re-consider[3] , which was denied on February 13, 1998. The motion to reconsider refers to the chancellor's need to reconsider his decision in light of twelve year old Laura's decision to live permanently with Thomas rather than with Sherrye. Such being the case, Thomas would have custody of all three children, effectively terminating his need to pay child support to Sherrye. However, facts subsequent to the trial could not cause errors in the trial which could be corrected on a reconsideration of a judge's decision from that trial. However, the proper approach would be to file a petition for modification of child support, citing a material change in circumstances. Since Thomas did not file the proper petition, we find the chancellor was correct in denying the requested relief.

### CONCLUSION

¶39. For the reasons stated in this opinion, we affirm the chancellor's decision on all issues.

¶40. **THE JUDGMENT OF THE JASPER COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, AND THOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.**

1. Thomas had deferred the income he received from Jasper County and Bay Springs to save up for future income deficiencies due to his medical condition.

2. For clarification purposes on the facts in this case, the Court acknowledges that no future modifications are allowable where material changes in circumstances are predictable at the time of the initial decree. *Morris v. Morris*, 541 So. 2d 1040, 1042 (Miss. 1989). However, because no one can now predict how or when Thomas's medical condition might alter his ability to produce income in the future, we hold that any such deterioration would not prohibit consideration of modification because of a material change in his career circumstances.

3. The proper style of a motion for relief from judgment is a Motion for New Trial, not a Motion to Reconsider. *See M.R.C.P. 59*; *Barber v. Balboa Life Ins. Co.*, 747 So.2d 863, 870 n.3 (Miss. Ct. App. 1999).