# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01283-SCT

*JAMES A. MACE*

v.

*ANGELA T. MACE*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/7/2000 |
| TRIAL JUDGE: | HON. MARGARET ALFONSO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID P. SULLIVAN |
| | JESS H. DICKINSON |
| ATTORNEY FOR APPELLEE: | JOSEPH R. MEADOWS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMAND IN PART - 05/30/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/20/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Dr. James A. Mace and Angela T. Mace were granted a divorce on the grounds of irreconcilable differences. The parties agreed to joint legal custody of their fourteen-year-old daughter, Brittany, with Mrs. Mace having paramount physical care, custody, and control. The parties were unable to reach an agreement as to the distribution of the marital estate and petitioned the Chancery Court of the First Judicial District of Harrison County to make the disposition, as well as a determination of child support and alimony.

¶2. Dr. Mace appeals the judgment of the chancery court, namely, the award of alimony and the inclusion

of his medical practice as a marital asset. Today, on a matter of first impression, we affirm the judgment of the chancery court as to the inclusion of Dr. Mace's medical practice as a marital asset, but vacate the judgment and remand this matter for an adequate valuation of the medical practice and reconsideration of the alimony award in light of that valuation.

## FACTS

¶3. The parties were married on July 24, 1981, at which time Dr. Mace was a medical student at the University of Mississippi Medical Center in Jackson and Mrs. Mace was an Emergency Medical Technician ("EMT") for an ambulance service. Mrs. Mace continued to work as an EMT for approximately two years, and her income was used to support the family. When her husband completed medical school, the couple moved to Memphis in order for Dr. Mace to complete his residency. Mrs. Mace was pregnant at this time and worked at various day care centers until the birth of the couple's child in 1984. Since that time, Mrs. Mace has not worked outside the home.

¶4. Dr. Mace, who is 45 years old, practices family medicine in Long Beach, Mississippi, and also works in the emergency room at Garden Park Hospital in Gulfport, Mississippi. Mrs. Mace has only a high school diploma and has no specialized training other than that of an EMT. Dr. Mace contends that he asked Mrs. Mace to work in his clinic and encouraged her to further her education, but that Mrs. Mace declined to do either.

¶5. Mrs. Mace, 46 years old, testified that she and her husband agreed that she should not work outside the home, but, rather, that she should devote herself to raising their daughter. Mrs. Mace suffers from nodular osteoarthritis, which has resulted in pain in her hands along with stiffness in her fingers. She testified that she is presently unemployed because of her osteoarthritis and because of her responsibilities in raising her daughter. However, Mrs. Mace's treating physician has stated that Mrs. Mace's prognosis is excellent and that nodular osteoarthritis rarely results in significant disability. In order to return to work as an EMT, Mrs. Mace would have to complete re-certification classes, which would take about a year.

¶6. The couple has been separated since September 1998, and was granted a divorce on the grounds of irreconcilable differences on December 14, 1999. After division of the marital assets, the chancellor awarded Mrs. Mace periodic alimony of $2,500 per month and $1,000 per month in child support. Dr. Mace was also ordered to continue paying Brittany's tuition at parochial school as well as the reasonable cost of her therapy.

¶7. Dr. Mace appeals the chancellor's award of alimony and disposition of marital assets, raising the following issues:

> **I. WHETHER THE CHANCELLOR ERRED BY INCLUDING DR. MACE'S MEDICAL PRACTICE AS A MARITAL ASSET.**
>
> **II. WHETHER THE CHANCELLOR'S VALUATION OF THE MEDICAL PRACTICE IS NOT SUPPORTED BY CREDIBLE EVIDENCE AND IS CLEARLY ERRONEOUS.**
>
> **III. WHETHER THE AWARD OF ALIMONY IS NOT SUPPORTED BY CREDIBLE EVIDENCE AND IS CLEARLY ERRONEOUS.**

## DISCUSSION

## I. WHETHER THE CHANCELLOR ERRED BY INCLUDING DR. MACE'S MEDICAL PRACTICE AS A MARITAL ASSET.

¶8. This Court has yet to determine whether a professional practice is an asset subject to the equitable distribution of marital assets dictated by *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). Though the issue was recently raised in *Brame v. Brame*, 796 So. 2d 970 (Miss. 2001), this Court clearly and expressly stated that it did not reach the issue of the chancery court's treatment of the husband's law practice as a marital asset as that issue was not raised by either party on certiorari and was not necessary to the Court's decision. *Id.* at 972-73. This is, therefore, an issue of first impression.

¶9. This Court first addressed the subject of professional *degrees* as marital property in *Guy v. Guy,* 736 So.2d 1042 (Miss. 1999). There we concluded that a professional degree acquired by one spouse during a marriage is not marital property. This Court, however, is not faced in the case sub judice with the question of an educational degree. Rather, the question is whether a spouse may be awarded an equitable percentage of the income-producing enterprise that was made possible by the other spouse's professional degree. The question is entirely different, as is the answer. As the opinions of our sister jurisdictions indicate, it is a sound rule that, although the individual right to practice is not a property right subject to distribution, the value of the practice as a business is subject to distribution.

¶10. In *Guy*, this Court, relying upon the majority rule that a professional degree is not an asset subject to equitable distribution, cited opinions from eighteen jurisdictions.[1] Of these eighteen jurisdictions which hold, as does Mississippi, that a professional degree is not a marital asset capable of equitable distribution, sixteen have held that a professional practice is a marital asset capable of equitable distribution.[2] The two jurisdictions which have not yet held that a professional practice is a marital asset, Massachusetts and Wyoming, have apparently not yet reached the question.

¶11. A practice, unlike a degree or license, can be sold. Its value is found in its facilities, equipment, fixtures, furniture, accounts receivable, and, some courts have held, good will.[3] While this Court has recognized that an educational degree is personal to its holder and nontransferable, *Guy*, 736 So. 2d at 1044, the marketability of a professional practice distinguishes it from a degree. Also, the rule that a professional license is not marital property does not prevent the practice from being marital property as the value of the practice does not include the seller's license.

¶12. The question posed in the case at bar is significantly controlled by the facts of the case. Where, as here, a couple marries, the wife works to put husband through medical school, and then the wife stays home to raise their child who at the time of the divorce was only 16 years of age, this Court has consistently stated that such spouse is entitled to an equitable share. We find that the chancery court correctly determined that Dr. Mace's medical practice was a marital asset subject to equitable division.

## II. WHETHER THE CHANCELLOR'S VALUATION OF THE MEDICAL PRACTICE IS NOT SUPPORTED BY CREDIBLE EVIDENCE AND IS CLEARLY ERRONEOUS.

¶13. The chancellor valued the medical clinic (the building itself) at $150,000, the equipment at $80,000, and the medical practice at $144,000. Dr. Mace does not dispute the court's valuation of the clinic. Rather, he disputes the value placed on the equipment as well as the practice as a whole.

¶14. The value of the equipment was apparently submitted by Dr. Mace himself. However, he testified

regarding the value of the equipment, that upon review he determined that it was "not that much." When asked about the value of the practice, he stated that he had not placed a value on it. Mrs. Mace's attorney then asked, "Can you place a value on it today?" Dr. Mace then stated, "I think the normal procedure is six times the ... net monthly income, so that would be approximately six times $24,000." Later, upon examination by his own attorney, Dr. Mace stated that he saw this formula in a medical journal and that he was only trying to be responsive to the questions asked of him, not giving an opinion as to the value of his practice.

¶15. It is unclear from the record the basis for the valuation of the practice. It cannot be determined exactly what the $144,000 included- whether it included the practice as a whole, including the medical equipment, or whether it was without any physical assets. If it included the physical assets, the chancellor erred in valuing the equipment separately at $80,000. Also, it is abundantly clear from the testimony that the valuation of the practice was unreliable. We note that neither party offered expert testimony as to the value of the practice. This Court in *Ferguson*, in establishing the guidelines for dividing marital property, acknowledged:

> Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division. Therefore, *expert testimony may be essential* to establish valuation sufficient to equitably divide property, particularly when the assets are as diverse as those at issue in the instant case.

*Ferguson*, 639 So. 2d at 929 (emphasis added). On remand the parties themselves may establish valuation of Dr. Mace's practice, if reliable, or they may prove valuation utilizing expert testimony. We note also that the chancery court may appoint an independent expert if absolutely necessary and if the parties are unable to show good cause as to why such expert should not be appointed. Miss. R. Evid. 706.

## CONCLUSION

¶16. The chancery court's inclusion of Dr. Mace's medical practice as a marital asset is affirmed. The chancery court's valuation of the practice is reversed, and this case is remanded for an adequate valuation of the practice. Also, the award of alimony is vacated, and the chancellor instructed to revisit the issue as alimony and equitable distribution should be considered together. *Ferguson*, 639 So. 2d at 929 (stating that though alimony and equitable distribution are different concepts, they should be considered together, as when one expands, the other must recede). Because the award of alimony is to be revisited, we need not address the remaining issue.

¶17. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., WALLER, COBB, DIAZ AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶18. I disagree with the majority's decision that Dr. Mace's medical practice is a marital asset subject to equitable distribution. This Court has held that a professional degree acquired by one spouse during a marriage is not marital property. *Guy v. Guy,* 736 So.2d 1042, 1047 (Miss. 1999). Our decision regarding professional degrees has been continually upheld. However, until now we have declined to make

a decision as to a professional practice. The majority refuses to extend our previous findings about professional degrees to professional practices. Instead, it makes a distinction between the professional degree and the practice which that degree enables its holder to establish. I fail to see the logic in separating the professional degree from the professional practice. The latter would not exist but for the former.

¶19. Undeniably a monetary value can be placed on the building where Dr. Mace's practice is located as well as the fixtures, furniture, equipment and accounts receivable pertaining thereto. However, these items should not be classified as marital assets. When considered together, these items, Dr. Mace's "tools of the trade," are more than just assets - along with the medical degree, they form the medical practice. It is this practice that has enabled Dr. Mace to accumulate all the marital assets obtained by the parties during their marriage. It is these "tools" that allow for alimony and child support. To take away or diminish his ability to practice therefore diminishes his ability to earn and provide the maximum amount for the above. There is no way to determine accurately how much the degree or the physical components of the practice contribute to the success of the practice as a whole and the income it generates. The two simply cannot be separated. To properly include the medical practice as a marital asset, its total value would have to be readily discernable. How can the practice be subject to equitable distribution when its aggregate value is unknown? To subject only a portion of the practice to equitable distribution is not equitable at all.

¶20. I would hold that Dr. Mace's practice is not a marital asset; and therefore, the decision of the chancellor as to this issue should be reversed.

### EASLEY, J., JOINS THIS OPINION.

1. *Guy*, 736 So. 2d at 1043 n.1: Arizona (*Pyeatte v. Pyeatte*, 135 Ariz. 346, 661 P.2d 196 (Ariz. Ct. App.1982); *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (Ariz. Ct. App.1981)); California (*In re Marriage of Sullivan*, 134 Cal.App.3d 634, 184 Cal.Rptr. 796 (Cal. Ct. App. 1982); *In re Marriage of Aufmuth*, 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (Cal. Ct. App. 1979), *overruled on other grounds*, *In re Marriage of Lucas*, 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (1980); *Todd v. Todd*, 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (Cal. Ct. App. 1969); Colorado (*In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978); *In re Marriage of McVey*, 641 P.2d 300 (Colo. Ct. App., 1981); Connecticut (*Zahler v. Zahler*, Conn.Super.Ct. New Haven Dist. Aug. 5,1982), 8 Fam.L.Rptr. 2694); Delaware (*Wright v. Wright*, 469 A.2d 803 (Del. Fam.Ct. 1983)); Florida (*Hughes v. Hughes*, 438 So.2d 146 (Fla. Dist. Ct. App. 1983); *Severs v. Severs*, 426 So.2d 992 (Fla.App. 5 Dist.,1983)); Indiana (*In re Marriage of McManama*, 272 Ind. 483, 399 N.E.2d 371 (1980); Iowa (*In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa, 1978); Kentucky (*Inman v. Inman*, 648 S.W.2d 847 (Ky. 1982) ; *McGowan v. McGowan*, 663 S.W.2d 219 (Ky.App., 1983); *Leveck v. Leveck*, 614 S.W.2d 710 (Ky. Ct. App. 1981); New Jersey (*Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527 (1982); New Hampshire (*Ruben v. Ruben*, 123 N.H. 358, 461 A.2d 733 (1983); New Mexico (*Muckleroy v. Muckleroy*, 84 N.M. 14, 498 P.2d 1357 (1972); Oklahoma (*Hubbard v. Hubbard*, 603 P.2d 747 (Okla., 1979); Texas (*Frausto v. Frausto*, 611 S.W.2d 656 (Tex.Civ.App.-San Antonio, 1980); Wisconsin (*In re Marriage of Lundberg*, 107 Wis.2d 1, 318 N.W.2d 918 (1982); Wyoming (*Grosskopf v. Grosskopf*, 677 P.2d 814 (Wyo., 1984).) *See also* Massachusetts (*Drapek v. Drapek*, 399 Mass. 240, 246, 503 N.E.2d 946, 950 (1987)); Pennsylvania (*Hodge v. Hodge*, 513 Pa. 264, 268-69, 520 A.2d 15, 17 (1986)).

2. Arizona (*Wisner v. Wisner*, 631 P.2d 115 (Ariz. Ct. App. 1981) (medical practice)); California

(*Watts v. Watts*, 217 Cal.Rptr. 301 (Cal. Ct. App. 1985) (medical practice)); Colorado (*Huff v. Huff*, 834 P.2d 244 (Colo. 1992) (law practice)); Connecticut (*Wolf v. Wolf*, 664 A.2d 315 (Conn. App. Ct. 1995) (medical practice)); Delaware (*E.E.C. v. E.J.C.*, 457 A.2d 688 (Del. 1983) (law practice)); Florida (*Thompson v. Thompson*, 576 So. 2d 267 (Fla. 1991) (law practice)); Indiana (*Landau v. Bailey*, 629 N.E.2d 264 (Ind. Ct. App. 1994) (law practice)); Iowa (*In re Marriage of White*, 537 N.W.2d 744 (Iowa 1995) (law practice)); Kentucky (*Owens v. Owens*, 672 S.W.2d 67 (Ky. Ct. App. 1984) (law practice)); New Hampshire (*Hillebrand v. Hillebrand*, 546 A.2d 1047 (N.H. 1988) (dental practice)); New Jersey (*Dugan v. Dugan*, 457 A.2d 1 (N.J. 1983) (law practice)); New Mexico (*Hurley v. Hurley*, 615 P.2d 256 (N.M. 1980) (medical practice) (overruled on other grounds by *Ellsworth v. Ellsworth*, 637 P.2d 564 (N.M. 1981))); Oklahoma (*Ford v. Ford*, 766 P.2d 950 (Okla. 1988) (law practice)); Pennsylvania (*Gaydos v. Gaydos*, 693 A.2d 1368 (Pa. Super. Ct. 1997)); Texas (*Eikenhorst v. Eikenhorst*, 746 S.W.2d 882 (Tex. Ct. App. 1988) (medical practice)); Wisconsin (*Sharon v. Sharon*, 504 N.W.2d 415 (Wis. Ct. App. 1993) (medical practice)).

3. The opinions of other jurisdictions are split regarding whether good will may be considered in valuing a professional practice and, if so, how good will is to be calculated. Mrs. Mace makes no argument regarding the consideration of good will in determining the value of her husband's practice and made no effort below to submit evidence in this regard. Because the issue is not before us at this time, we decline to address it.